# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GEORGE N. ALLEN,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN MAYBERG, et al.,<br><br>Defendants. | No. 1:06-CV-01801-BLW-LMB<br><br><br>**ORDER** |
| RICK GONZALES,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF<br>MENTAL HEALTH, et al.,<br><br>Defendants. | No. 1:07-CV-00427-BLW |
| RAYMOND AMEDEO,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN MAYBERG, et al.,<br><br>Defendants. | No. 1:07-CV-00834-BLW |

ORDER - 1 -

MANSFIELD R. BROWN,

Plaintiff,

                v.

STEPHEN MAYBERG, et al.,

Defendants.

No. 1:07-CV-00849-BLW

WAYNE P. DeBERRY,

Plaintiff,

                v.

STEPHEN MAYBERG, et al.,

Defendants.

No. 1:07-CV-00850-BLW

DON D. McNEAL,

Plaintiff,

                v.

STEPHEN MAYBERG, et al.,

Defendants.

No. 1:07-CV-00851-BLW

**ORDER - 2 -**

HENRY C. SCOTT,

Plaintiff,

       v.

STEPHEN MAYBERG, et al.,

Defendants.

No. 1:07-CV-00897-BLW

LAWRENCE SMITH,

Plaintiff,

       v.

STEPHEN MAYBERG, et al.,

Defendants.

No. 1:07-CV-00913-BLW

FRED SCOTT,

Plaintiff,

       v.

STEPHEN MAYBERG, et al.,

Defendants.

No. 1:07-CV-00985-BLW

**ORDER - 3 -**

| | |
|---|---|
| HAROLD E. CARMONY,<br><br>Plaintiff,<br><br>   v.<br><br>CALIFORNIA DEPARTMENT OF<br>MENTAL HEALTH, et al.,<br><br>Defendants. | No. 1:07-CV-01558-BLW |
| ELDRIDGE CHANEY,<br><br>Plaintiff,<br><br>   v.<br><br>STEPHEN MAYBERG, et al.,<br><br>Defendants. | No. 1:08-CV-01196-BLW |

## I.  INITIAL REVIEW

Pursuant to 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which [plaintiff appearing pro se] seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  *Id.* § 1915A(b).

The Court must dismiss a complaint or any portion thereof that states a claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or

that seeks monetary relief from a defendant who is immune from such relief.  §§ 1915(e) and 1915A.

**A.    Standard**

"[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . . .  [The] term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996) (*Bivens* action); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (non-prisoner § 1983 action); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 882 (9th Cir. 1991) (prisoner § 1983 action).  Where "there is no controlling authority requiring a holding that the facts as alleged fail to establish even an arguable claim as a matter of law," the complaint cannot be dismissed as legally frivolous. *Guti v. INS*, 908 F.2d 495, 496 (9th Cir. 1990) (per curiam) (citing *Pratt v. Sumner*, 807 F.2d 817, 820 (9th Cir. 1987)); *see also Iasu v. Smith*, 511 F.3d 881, 892 (9th Cir. 2007).

When determining whether a complaint is frivolous, the court need not accept the allegations as true, but must "pierce the veil of the complaint's factual allegations," *Neitzke*, 490 U.S. at 327, to determine whether they are "'fanciful,' 'fantastic,' [or] 'delusional,'" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (quoting *Neitzke*, 490 U.S. at 328).  A complaint may not, however, be dismissed as frivolous merely because the allegations are unlikely.  *See Denton*, 504 U.S. at 33.  A complaint may be dismissed as frivolous where a defense is obvious on the face of the complaint.  *See Franklin v. Murphy*, 745 F.2d 1221, 1228–29 (9th Cir. 1984).  But, the court may not anticipate defenses.  *Id.*  A complaint may also be dismissed as frivolous

if it "merely repeats pending or previously litigated claims." *Cato*, 70 F.3d at 1105 n.2 (citations and internal quotations omitted).

In the Ninth Circuit, "[p]ro se plaintiffs proceeding [in forma pauperis] must . . . be given an opportunity to amend their complaint [prior to dismissal] unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Franklin v. Murphy*, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984) (citation and internal quotations omitted); *see also Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 529-30 (9th Cir. 1985); *cf. Denton v. Hernandez*, 504 U.S. 25, 34 (1992) (suggesting that if the complaint's deficiencies could be remedied by amendment, then it may be abuse of discretion to dismiss complaint without granting leave to amend). The plaintiff must also be given some notice of the complaint's deficiencies prior to dismissal. *See Cato*, 70 F.3d at 1106; *cf. Denton*, 504 U.S. at 34 (declining to address the Ninth Circuit's notice and leave-to-amend rule for frivolous complaints).

The Prison Litigation Reform Act ("PLRA") states that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1). The Ninth Circuit Court of Appeals has concluded that this provision applies to all appeals pending on or after the enactment of the PLRA. *See Anderson v. Angelone*, 123 F.3d 1197, 1199 (9th Cir. 1997); *Marks v. Solcum*, 98 F.3d 494, 495-96 (9th Cir. 1996) (per curiam); *see also Franklin v. Oregon*, 662 F.2d 1337, 1340-41 (9th Cir. 1981) (discussing procedural requirements for sua

sponte dismissal for failure to state a claim).  This provision is "not limited to prisoners," and

applies to Plaintiffs here.  *See Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

"In determining whether a complaint states a claim, all allegations of material fact are

taken as true and construed in the light most favorable to the plaintiff.  A complaint may not be

dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

[the plaintiff's] claims which would entitle [the plaintiff] to relief."  *Barnett v. Centoni*, 31 F.3d

813, 816 (9th Cir. 1994) (citations omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976);

*Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998); *Hale v. Arizona*, 993 F.2d 1387, 1391 (9th

Cir. 1993).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to

defeat a motion to dismiss."  *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).

## B.    Summary of Plaintiffs' Complaints

By way of summary, Plaintiffs are sexually violent predators ("SVPs")[1] being housed at

Coalinga State Hospital (CSH) in Coalinga, California.  Plaintiffs all allege that the acts

complained of occurred at CSH.  Plaintiffs name the following as defendants: Stephen Mayberg,

Director of California Department of Mental Health; W.T. Voss, Executive Director of CSH;

Ben McClain, Executive Director of CSH; Norman Kramer, Executive Director of CSH; George

Maynard, Assistant Administrator; Gary Renzaglia, Clinical Administrator of CSH; Linda Clark,

CPS Movie Chairperson; Rocky Spurgeon, Program Director at CSH; Eddie Sanchez, Security

---

[1]  An SVP is "a person convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others, [and] is likely [to] engage in sexually violent criminal behavior . . . .  If that person is found by a jury to be an SVP who poses a danger to the health and safety of others, he is civilly committed for an indefinite period to commence after his criminal sentence is fulfilled."  *Sundquist v. Philp*, 2008 WL 859452, *2 (N. Dist. Cal. 2008).

ORDER - 7 -

Director; Charles Rabault, Chief DPS; Sharon Rogers, Lieutenant DPS; Tom Hunt, External

Affairs Administrator; Pam Ahlin; Cynthia Radavsky; and Does 1-99.

Plaintiffs allege that a number of policies and procedures at CSH violate their

constitutional rights (i.e., visitation restrictions, restriction of movies for private viewing,

searches of dorms, seizure/restriction of possession of personal items, noises within living

quarters via the PA system, police officers involvement in patient treatment plans rather than

health care workers, searches of mail, job assignment and training, and residents' wages).

Specific details are discussed further below.  Plaintiffs seek declaratory, injunctive and monetary

relief.  Finally, it is important to note that each Plaintiff challenges only their conditions of

confinement and not their civil commitment.

**C.    Plaintiffs' Claims for Relief**

**1.    Visitation Restrictions**

Plaintiffs allege their constitutional rights have been infringed by CSH's policy of not

allowing visitation from anyone under the age of eighteen.

**a.    Fourteenth Amendment**

The Constitution protects "certain kinds of highly personal relationships," *Roberts v.

United States Jaycees*, 468 U.S. 609, 618 (1984).  At a minimum, SVPs must be afforded the

same rights afforded prisoners confined in a penal institution.  *Hydrick v. Hunter*, 500 F.3d 978,

998 (9th Cir. 2007) (abrogated on other grounds).  Further, a parent has a fundamental interest in

maintaining a relationship with his child.  *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir.

2001) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  However, many liberties and

privileges enjoyed by other citizens must be surrendered when one is rightfully incarcerated,

**ORDER - 8 -**

either as an inmate or an SVP.  *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2001).  Put simply, "[a]n inmate does not retain rights inconsistent with proper incarceration."  *Id.*

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Id.*

With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  *Id.* at 563–71.  So long as the five minimum *Wolff* requirements are met, the due process clause of the 14th Amendment has been satisfied.  *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994). "Some evidence" must support the decision of the hearing officer.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ."  *Id.* at 455–56 (emphasis added).

Here, Plaintiffs fail to state a cognizable claim as none allege sufficient facts for the Court to ascertain whether or not a liberty interest was even infringed upon.  Plaintiffs complain of the prohibition of visits from relatives under the age of 18 for all patients, but there is no

mention as to whether any Plaintiff has actually been unreasonably restricted from visits from his own children, and/or who, if any, of his own immediate family have been unable to visit him. Plaintiffs also fail to state what, if any, procedural due process they were provided before this restriction/prohibition was imposed.  Thus, Plaintiff's claim under the Fourteenth Amendment regarding the prohibition of all visitors under the age of 18 is not cognizable at this time.

      **b.**      **Equal Protection**

      The Equal Protection Clause requires that persons who are similarly situated be treated alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A plaintiff may establish an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class.  *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).  Under an equal protection theory, a plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

      If the action in question does not involve a suspect classification, such as the case here, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004); *Sea River Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  *Village*

**ORDER - 10 -**

*of Willowbrook*, 528 U.S. at 564.  If an equal protection claim is based upon the defendants'
selective enforcement of a valid law or rule, a plaintiff must further show that the selective
enforcement is based upon an "impermissible motive."  *Squaw Valley*, 375 F.3d at 944; *Freeman
v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

SVPs do not constitute a suspect class.  *See Harper v. Va. State Bd. of Elections*, 383
U.S. 663, 670 (1966) and *Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972).  However,
heightened scrutiny may be required where fundamental interests are at issue.  A "heightened
scrutiny standard" has been utilized when evaluating an equal protection violation under
sexually violent predator statutes.  *See Young v. Weston*, 176 F.3d 1196, 1201 (9th Cir. 1999)
(rev'd on other grounds); *Seling*, 531 U.S. 250.  In other words, heightened scrutiny will be
applied where a fundamental liberty interest is at stake.  *See Skinner v. Oklahoma*, 316 U.S. 535,
541 (1942).

Plaintiffs *may* be able to claim violations of a clearly established fundamental right.
*Youngberg*, 457 U.S. at 315–16.  Thus, a Plaintiff may be able to show that a difference
in treatment between himself and other civilly committed persons violates equal protection
because such treatment does not meet heightened scrutiny.  At the same time, however, it cannot
be said that it is firmly established that *every* condition of an SVP's confinement is subject to
heightened scrutiny.  *Hydrick* 500 F.3d at 998 (9th Cir. 2007).  In the prison setting, prison
officials need some latitude in deciding how to run prisons.  The courts have consistently refused
to subject each classification drawn by prison officials to heightened scrutiny.  Rather, a prisoner
cannot challenge the conditions of his confinement on equal protection grounds unless the

discrimination against him is irrational or arbitrary.  *McGinnis v. Royster*, 410 U.S. 263, 276 (1973).

Here again, Plaintiffs complain of the prohibition of visits from relatives under the age of 18, but fail to mention whether any of them has actually been unreasonably restricted from visits from his own children, and what, if any, of his own immediate family have been unable to visit him because of this policy.  Plaintiffs fail to state whether other SVP's receive different visitation restriction(s).  Plaintiffs have not, but might be able to, state a cognizable claim for violation of their rights on equal protection grounds.

### c.    Cruel & Unusual Punishment

Plaintiffs also allege that the visitation restrictions at CSH constitute cruel and unusual punishment in violation of the Eighth Amendment.  An essential prerequisite to an Eighth Amendment claim is that the claimant is being punished.  The California Supreme Court noted that "[t]he Legislature . . . made clear that, despite their criminal record, persons eligible for commitment and treatment as SVP's are to be viewed 'not as criminals, but as sick persons.'" *Hubbart v. Superior Court*, 969 P.2d 584, 606 (1999) (citing Cal. Welf. & Inst.Code § 6250).  Because the SVPA is civil rather than criminal or punitive in nature, and Plaintiffs are not being punished, Plaintiffs have no right to make a claim under the Eighth Amendment.  *See DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 199 n. 6 ("The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").  Put another way, "the Eighth Amendment is not the proper vehicle to challenge the conditions of civil commitment." *Rainwater v. Alarcon*, 268 Fed. Appx. 531, 534 (2008).

ORDER - 12 -

Essentially, Plaintiffs claim that visitation restrictions amount to cruel and unusual punishment.  However, this "punitive as applied" argument has already been foreclosed by the Supreme Court.  *See Seling v. Young*, 531 U.S. 250 (2001) ("An Act, found to be civil, cannot be deemed punitive "as applied" to a single individual in violation of the [Eighth Amendment] and provide cause for [redress].").  An SVP plaintiff cannot state cognizable claims regarding the conditions of their confinement under the Eighth Amendment.  Accordingly, these claims will be dismissed without leave to amend.

> ### 2.   *Movie Restrictions*

Plaintiffs claim that, after an agreement was reached between the hospital administration and the Patients Advisor Council as to content ratings and restrictions of DVD movies for patients' personal use, defendants began applying a different, much more restrictive policy, which lead to an alleged violation of their constitutional rights under the First Amendment, Ninth Amendment, Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the violation of his rights under sections 1985 and 1986.

> #### a.   **First and Fourteenth Amendments**

"[C]ivilly detained persons must be afforded 'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Hydrick*, 500 F.3d at 989 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982)).  "[T]he rights afforded prisoners set a floor for those that must be afforded [to civil detainees]." *Id.* (citing *Youngberg*, 457 U.S. 307).  When determining the rights of civil detainees, "[t]he law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those

housed at the facility."  *Id*.  "As is the case with prisoners, civilly committed persons retain those First Amendment rights not inherently inconsistent with the circumstances of their detention."  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

Nonetheless, Plaintiffs' allegations regarding the DVD restrictions state cognizable claim(s) under the First Amendment and Fourteenth Amendment.  Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id*.  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

### b.      Ninth Amendment

Plaintiffs seem to allege a claim for relief for violation of the Ninth Amendment, which provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const., amend. IX.  The Ninth Amendment does not provide a basis upon which plaintiff may impose liability under §1983 because it does not "independently [secure] any constitutional right . . . ."  *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (citations omitted); *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029 (9th Cir. 2002) (Ninth Amendment claim properly dismissed because plaintiff's may not "double up constitutional claims"); *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991) (Ninth Amendment "not interpreted as independently securing any constitutional rights for purposes of making out a constitutional claim").  Accordingly, Plaintiffs' attempts at imposing liability under the Ninth Amendment fail as a matter of law are dismissed without leave to amend.

ORDER - 14 -

### 3.      Search & Seizure

Plaintiffs complain that, during a lock down, super glue, a small screw driver, and a small scratching tool were found in a dorm room assigned to four men.  Subsequently, the entire unit was locked down and searched.  Plaintiffs complain that during this search, personal computers, dvd and cd players and other recordable media were confiscated.

### a.      Fourth Amendment

The Ninth Circuit has held that "the Fourth Amendment right to be secure against unreasonable searches and seizures "extends to incarcerated prisoners." *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir.1988)).  Thus, this protection certainly extends to SVPs.

"The reasonableness of a particular search [or seizure] is determined by reference to the [detention] context." *Michenfelder*, 860 F.2d at 332.  Here, the state's concerns regarding SVPs are the same as those regarding incarcerated prisoners, e.g., "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001).  However, the "reasonableness" of a search or seizures is a fact-intensive inquiry that cannot be determined without submission of evidence.  *Hydrick*, 500 F.3d at 993.

Plaintiffs state cognizable claims under the Fourth Amendment regarding the search of all of the units and confiscation of laptop computers and other recordable media, when super glue and a three inch screw driver were found in one dorm.  The Court will not be able to address the "reasonableness" of that search and seizure until evidence is submitted.

### b.      Fifth Amendment

The Takings Clause of the Fifth Amendment "limits the government's ability to confiscate property without paying for it," and "is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Vance v. Barrett*, 345 F.3d 1083, 1089 (9th Cir. 2003) (internal quotations and citation omitted).  Plaintiffs' personal property was not confiscated by Defendants for a public purpose and, thus, their takings claim fails as a matter of law. *See Kelo v. City of New London, Connecticut*, 545 U.S. 469, 477-80 (2005).

### c.      Fourteenth Amendment

It is beyond dispute that SVP's have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).  In this context, the Due Process Clause protects prisoners from being deprived of their property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, *see, e.g., Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533 (1984). In other words, only an authorized, intentional deprivation of property is actionable under the Due Process Clause. *See id*.

An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. at 436; *see also Knudson v.*

*City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).  Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  "An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  *Hudson*, 468 U.S. at 533 (1984).  Thus, where the state provides a meaningful post-deprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause.  *Id.*

Plaintiffs' claims regarding the confiscation of laptop computers and other writable media are not cognizable under the Fourteenth Amendment.  Plaintiff has not alleged sufficient facts for the Court to determine whether the deprivation was authorized, or unauthorized.  However, it appears that Plaintiffs' are alleging that is was unauthorized; that the taking was not carried out pursuant to established state procedures, regulations, or statutes.   If, instead, it was authorized, so long as Plaintiffs were provided with process, prison officials may deprive them of their property.

### 4.    Mail

Plaintiffs all allege on December 11, 2006, Administrative Directive ("AD") #662 was implemented.  According to Plaintiffs, AD #662 permits police officers to open and examine all incoming and outgoing, regular and legal, mail without just cause in violation of their constitutional rights.

#### a.    First Amendment

Prisoners have a "First Amendment right to send and receive mail."  *Witherow v. Paff*, 52

F.3d 264, 265 (9th Cir. 1995).  Prison regulations relating to the regulation of incoming mail are analyzed under the *Turner* reasonableness standard set forth in *Turner v. Safley*, 482 U.S. 78, 89– 91 (1987).  *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989).  Regulations are valid if they are reasonably related to legitimate penological interests.  *Turner*, 482 U.S. at 89.  When evaluating the reasonableness of the regulation, court considers the following factors:  (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it;" (2) "whether there are alternative means of exercising the right;" (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates;" and (4) "the absence of ready alternatives."  *Turner*, 482 U.S. at 89-90.

Censorship of outgoing prisoner mail is justified if the following criteria are met:  (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (overturned, in part, by *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989) (*Turner* applies to incoming mail and *Procunier* applies to outgoing mail).

As previously mentioned, Plaintiffs are civilly detained in a state hospital, and as a result, some curtailment of their rights is to be expected.  *See Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162 (2003).  Determining whether or not Defendants actions impermissibly infringed upon Plaintiffs' rights requires the Court to balance of Plaintiffs' rights with the State's interests in institutional safety and security.  *Hydrick*, 500 F.3d at 990.  Because a balancing of those

rights and interests requires the parties to make an evidentiary showing as to their positions, the Court is not in a position to make a determination at this stage.  *See Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008).

The Court finds that Plaintiffs have not stated a cognizable claim for relief based on the seizing and opening of Plaintiff's incoming and outgoing *regular mail*.  Further, the mere fact that prison officials open and conduct a visual inspection of a prisoner's *legal mail* does not state a claim for violation of a prisoner's constitutional rights.  *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *Mitchell v. Dupnick*, 75 F.3d 517, 523 (9th Cir. 1996).  Prison officials may, consistent with the First Amendment, open mail from attorneys in the presence of the prisoner for visual inspection.  *See id*.

In *Wolff*, the Supreme Court noted that inspecting mail from attorneys in the presence of the inmate did all, and perhaps even more, than the Constitution requires.  *Id*.  The issue of whether or not prison officials may also, consistent with the First Amendment, open and visually inspect mail from attorneys outside the presence of a prisoner, and/or SVP has not been decided by the Supreme Court or by this Circuit.

Correspondence between an attorney and a client is entitled to special protection under the attorney-client privilege.  However, "[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail."  *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996).  "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files."  *Id*. at 1094 (citing *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987)).

**ORDER - 19 -**

Plaintiffs have failed to state enough detail regarding the seizing and opening of the mail they consider to be "legal" in nature for the Court to ascertain whether he might be able to state a cognizable claim.  Accordingly, Plaintiffs' claims regarding the seizing and opening of their legal mail is not cognizable at this time.

### 5.        Conditions of Commitment

Plaintiffs' allegations could be interpreted to allege that the conditions at CSH constitute cruel and unusual punishment in violation of the Eighth Amendment.  As previously noted, the Eighth Amendment has, as an essential prerequisite, the right to punish.  *See DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 199 n. 6 ("The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").

If read to allege an Eighth Amendment violation, Plaintiffs' claims that their conditions of confinement amount to punishment, is not cognizable under the Eighth Amendment.  Any "punitive as applied" argument is, again, foreclosed by *Seling v. Young*, 531 U.S. 250 (2001).  Therefore, SVP plaintiffs cannot state cognizable claims regarding the conditions of their confinement under the Eighth Amendment.  *Id*.

"SVP's are detained for the purpose of treatment, and the state's power to punish them expires at the end of their sentence.  Accordingly, the Eighth Amendment is not the proper vehicle to challenge the conditions of civil commitment."  *Hydrick v. Hunter*, 500 F.3d 978, 994 (9th Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)).

Nonetheless, the applicable standard under the Fourteenth Amendment is at least coextensive with that applicable to prisoners under the Eighth Amendment.  *See, e.g., Munoz v.*

*Kolender*, 208 F.Supp.2d 1125, 1146 (S.D.Cal. 2002) (applying Fourteenth Amendment

standards to SVPs because "comparable standards apply to both prisoners' Eighth Amendment

cruel and unusual punishment and Fourteenth Amendment substantive due process analyses,

with Fourteenth Amendment analysis borrowing from Eighth Amendment standards"); *Frost v.

Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (applying Eighth Amendment standards to evaluate

pretrial detainees' Fourteenth Amendment claims).  With the abundance of cases regarding

unconstitutional conditions of confinement under the Fourteenth Amendment, those cases

addressing unconstitutional conditions of confinement under the Eighth Amendment at least

provide minimum standards to be applied when reviewing such claims by SVPs.  *Hydricks* 500

at 997 (2007) (citing *Munoz*, 208 at 1146, and *Anderson v. County of Kern*, 45 F.3d 1310,

1314–15 (9th Cir.1995)).

### a.     Possession of Personal Items

Plaintiffs allege that, at CSH, they were prohibited from possessing a number of personal

items that they were allowed to possess while in prison, and that SVP's committed in the State of

Washington are allowed to possess.

Treatment is presumptively punitive when a civil detainee is confined in conditions

identical to, similar to, or more restrictive than his criminal counterparts.  *Jones v. Blanas*, 393

F.3d 918, 932-33 (9th Cir. 2004) (citations omitted).  Thus, Plaintiffs have stated a cognizable

claim regarding the prohibition of certain personal property items.

### b.     PA System

Plaintiffs also complain that, the overhead PA System is entirely too loud in patients'

rooms, that it is "effectively damaging patients hearing," and that it has been frequently used to

awaken patients at early morning hours with false alarms and testing.

"[P]ublic conceptions of decency inherent in the Eighth Amendment require that [inmates] be housed in an environment that, if not quiet, is at least reasonably free of excess noise." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996).   A claim regarding conditions causing a prisoner "grave sleeping problems" and other mental and psychological problems has been found cognizable.  *Id*.  Thus, Plaintiffs state a cognizable claim as to the PA System damaging patients hearing and disrupting their sleep on a regular and repeated basis.

### c.   Police Presence

Plaintiffs complain that police officers are on treatment units, overseeing SVPs' daily needs instead of licensed mental health care providers.  Plaintiffs "now expect the hospital policies to become more restrictive with a police force armed to back the policies enacted by administrators and police, which violate patients' constitutional rights."

The fact that corrections officers are on the treatment units overseeing SVPs' daily needs instead of licensed mental health care providers, without more, does not offend the Constitution. Further, Plaintiffs' anticipation that the policies will become more restrictive are speculative. Therefore, Plaintiffs' claims arising from the mere fact that armed officers are on the units with patients, instead of licensed mental health care providers, are not cognizable under section 1983.

### d.   Non-smokers Rights

Plaintiffs request the court issue orders: "for CSH to open the main yard so that patients can run, exercise, and play sports, this is a right;" and "establishing a non-smoking treatment unit for non-smokers, or a smoking room for those who want to smoke without infringing upon the non-smokers rights."

Plaintiffs fail to state any facts as to how access to the main yard is unconstitutionally restricted or how current smoking/non-smoking areas, policies, and the like, might rise to the level of a constitutional violation.  Thus, any claims that Plaintiff might intend to raise as to the main yard and/or regarding the smoking policies at CSH are not cognizable at this time.

### 6.      Vocational Training/Placement

Plaintiffs alleges that "CSH has adopted a policy of trying to coerce patients into treatment by using a discriminatory practice of allowing patients who are involved in Phases, first choice of jobs or vocational training programs when they become available."  It is unclear from the pleadings if any Plaintiff participates in the system.

Regardless, the granting of privileges to persons who engage in treatment does not mean that persons who do not receive those privileges are in any way being punished.  "To impose liability on any named defendant, plaintiff needs to show a violation of a right of constitutional magnitude."  *Spicer v. Richards*, 2007 WL 4561101 (W.D. Wash. Dec. 21, 2007) (regarding a similar or identical program with SVPs).  Participation in vocational opportunities is a constitutionally sound protocol for encouraging pro-social behavior and treatment participation by SVP residents.  *Id*.

Regardless, based on the alleged facts, Plaintiffs would not have a liberty interest in any vocational placement, *Sandin v. Connor*, 515 U.S. 472, 484 (1995), nor would they have a property interest in any such job.  *See Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1995).  Because Plaintiffs have neither a liberty interest nor a property interest in vocational placement, Plaintiffs were never entitled to any

procedural due process protections in conjunction with their vocational training/placement opportunities, or lack thereof.

Plaintiffs have failed to allege any facts that suggest that they were removed and/or denied vocational training/placement on a basis that infringed upon any constitutionally protected interests. *Vignolo*, 120 F.3d at 1077. Accordingly, Plaintiffs' allegations regarding vocational issues and treatment participation fail to give rise to a cognizable constitutional violation.

### 7.    Wages

Some Plaintiffs claim that they were not provided appropriate wages for their services as an employed patient worker at CSH. Plaintiffs claim that the wages received violate the Fair Labor Standards Act ("FLSA"), the Thirteenth Amendment (forced involuntary servitude), the Fourteenth Amendment, and the Equal Protection Clause.

### a.    FLSA

The FLSA requires employers to pay employees a minimum hourly wage and overtime pay. 29 U.S.C. §§ 201–19 (1988). Its essential purpose is to provide workers a "minimum standard of all living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. If the sentence compels work and the prisoner's custodian sets the wages, the Fair Labor Standards Act does not protect the prisoner. *Henthorn v. Dept. of Navy*, 29 F.3d 682 (D.C. Cir. 1994). Thus, to the extent that Plaintiff has been compelled to work as a part of his commitment, he is not entitled to the a minimum hourly wage and/or overtime pay.

In a similar non-prisoner case, the Supreme Court, articulated an "economic reality test" to be considered in deciding if an employee-employer relationship exists. *Goldberg v. Whitaker*

*House Coop.*, 366 U.S. 28, 33, (1961).  In *Goldberg*, the Court held that a determination under

the FLSA of whether an employment relationship exists should be based on the "economic

reality" of the employment situation.  The Court did not specify factors to be weighed in this

evaluation.  However, the Ninth Circuit, in deciding if an employer-employee relationship exists,

has applied an "economic reality" test which identifies four factors: whether the alleged

employer (1) had the power to hire and fire the employees; (2) supervised and controlled

employee work schedules or conditions of employment; (3) determined the rate and method of

payment; and (4) maintained employment records.

   The proper starting point in a case such as this is the state's control over its inmates.

Where the state provides the inmates' food, shelter, and clothing, gives permission for a prisoner

to be allowed the privilege of working, the state's absolute power over the inmate is a power that

is not a characteristic of, but inconsistent with, the bargained-for exchange of labor which occurs

in a true employer-employee relationship.  *See Gilbreath v. Cutter Biological Inc.*, 931 F.2d

1320.  Plaintiffs have not stated an economic need for the FLSA.  Plaintiff have not stated facts

to address any of the above factors.  Thus, Plaintiffs fail, and appear unable, to state a cognizable

wage claim under the FLSA.

   **b.      Thirteenth Amendment**

   The law is clear that prisoners may be required to work and that any compensation for

their labor exists by grace of the state.  *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992)

(citing *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir.)); *Sigler v. Lowrie*, 404 F.2d 659 (8th Cir.

1968).  There is no authority to justify a digression from this well established law when the case

involves an SVP, rather than a prisoner.  Further, Plaintiffs factual allegations fail to show that

any of them were forced to hold a job at CSH.  Rather, the facts show that SVPs involved in

treatment are allowed first choice of jobs and/or vocational training when such positions become

available.  This implies a voluntary election to participate in vocational training/placement.

Accordingly, Plaintiffs are unable to state a cognizable claim that they are being forced into

involuntary servitude in violation of the Thirteenth Amendment.

### c.      Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment protects prisoners from being

deprived of life, liberty, or property without due process of law.  *Wolff*, 418 U.S. at 556.

Plaintiffs have not alleged facts that would support a claim that they were deprived of a protected

interest without procedural due process as to wages, or lack thereof.

> To establish a violation of substantive due process . . . , a plaintiff is ordinarily
> required to prove that a challenged government action was clearly arbitrary and
> unreasonable, having no substantial relation to the public health, safety, morals, or
> general welfare.  Where a particular amendment provides an explicit textual source
> of constitutional protection against a particular sort of government behavior, that
> Amendment, not the more generalized notion of substantive due process, must be the
> guide for analyzing a plaintiff's claims.

*Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets

omitted).  Plaintiffs have not alleged facts that would support a claim that their rights under the

substantive component of the Due Process Clause were violated by the wages received.

### d.      Equal Protection Clause

The Equal Protection Clause requires that persons who are similarly situated be treated

alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  There are

two ways to establish a cognizable equal protection claim.  First, a plaintiff can establish an

equal protection claim by showing that the defendant has intentionally discriminated on the basis

of the plaintiff's membership in a protected class. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.2001). Under this theory, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action does not involve a suspect classification, a plaintiff can establish a proper claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004); *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege: (1) that they are a member of an identifiable class; (2) they were intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." *Squaw Valley*, 375 F.3d at 944; *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir.1995).

To bolster their claim, Plaintiffs complain that patients at Atascadero State Hospital were paid state or federal minimum wages. Plaintiffs state that patients whose commitment was "penal" in nature (which the Court infers to mean SVP's), however, received wages below the federal or state minimum. Those Plaintiffs seem to indicate that they receive pay at the rate of one dollar ($1.00) per hour at CSH. However, Plaintiffs fail to state anything to show that the

wages they received were based on impermissibly motivated selective enforcement.  Further,

Plaintiffs have not shown that they are members of a protected class, or that Defendants' actions

were a result thereof.  Accordingly, Plaintiffs claims under the Equal Protection Clause are not

cognizable.

### 8.      Double Jeopardy and Ex Post Facto

The Supreme Court has held that "[a]n Act, found to be civil, cannot be deemed punitive

'as applied' to a single individual in violation of the Double Jeopardy and Ex Post Facto clauses

and provide cause for release."  *Seling v. Young*, 531 U.S. 250, 267 (2001).  Similarly, the

California Supreme Court has stressed the civil nature of an SVP commitment and has rejected

challenges to California's SVP Act based on the Ex Post Facto and Double Jeopardy Clauses of

the Constitution.  *See Hubbart v. Super. Ct.*, 19 Cal.4th 1138, 1171 (1999).  Any of Plaintiffs'

claims based on the Double Jeopardy and/or Ex Post Facto clauses of the Constitution are thus

foreclosed.  Hydrick, 500 F.3d at 993 (9th Cir. 2007).

### 9.      42 U.S.C. § 1983 – Retaliation

The statute under which this action was filed, § 1983, provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected,
> any citizen of the United States . . . to the deprivation of any rights, privileges, or
> immunities secured by the Constitution . . . shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 requires a connection or link between the actions of the defendants and the

deprivation alleged to have been suffered by plaintiffs.  *See Monell v. Department of Social*

*Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  "A person subjects another

to the deprivation of a constitutional right, within the meaning of section 1983, if he does an

affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). To establish a prima facie case, Plaintiffs must allege and show that Defendants acted to retaliate for their exercise of a protected activity; and Defendants' actions did not serve a legitimate penological purpose. *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Pratt* 65 F.3d at 807. In retaliation cases, the alleged injury asserted is the retaliatory conduct's chilling effect on the plaintiff's First Amendment rights. *See Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

A plaintiff asserting a retaliation claim must demonstrate a causal nexus between the alleged retaliation and Plaintiffs' protected activity (*i.e.*, filing a legal action). *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979); *see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). A plaintiff must submit evidence, either direct or circumstantial, establishing a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt*, 65 F.3d at 806. The timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See id.*; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). Plaintiffs request that the court issue an order barring CSH administrators from taking revenge against them. Plaintiffs have failed to allege

any facts to show an injury, or to otherwise support a claim that any of them have been retaliated against as a result of pursuing their individual actions.  Accordingly, Plaintiffs fail to state a cognizable claim for unconstitutional retaliation at this time.

      **10.**     **Computers**

According to some of Plaintiffs' complaints, a February 28, 2007, memo put an indefinite moratorium on Plaintiffs' ability to procure new computers, writable media, and similar devices.

Without commenting on the merits of Plaintiffs' claims regarding this issue, the Court has learned that the State of California is revising its policy regarding inmate access to computers and other conditions of confinement.  Further, it has been expressed to the court that resolution of this issue could well lead to settlement of all claims.  Finally, Defendants have expressed that they are willing to participate in a judicially supervised settlement conference on this issue.

In the interest of expeditiously resolving all of the consolidated cases, this claim will not be addressed in this IRO.  Rather, the case will be referred for settlement on this issue.  To promote full resolution of Plaintiffs' claims, the undersigned will further appoint counsel to represent Plaintiffs for settlement purposes only.  Plaintiffs and Defendants are admonished that referral to settlement judge is with the intent that all claims be resolved during the settlement process.  Reasonableness and patience are keys to a successful outcome.

Referrals related to settlement will be addressed in a separate order.

**C.**     **Plaintiffs' Motion to Certify Class**

Although the district court had filed an order staying the action, on May 26, 2009, Plaintiffs filed a motion seeking certification as a class action. (Docket No. 26).

Plaintiffs' obvious rational for seeking class status stems from the substantially similar to identical nature of Plaintiffs' Complaints.  This is the third time Plaintiff Allen has sought to certify his claim as a class action.  (Docket Nos. 12, 20).

Federal Rule of Civil Procedure 23, the guiding rule regarding class actions, has a number of prerequisites that must be shown before a class is certified.  Rule 23(a) provides the prerequisites for class actions as follows:

> (a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>> (1) the class is so numerous that joinder of all members is impracticable;
>>
>> (2) there are questions of law or fact common to the class;
>>
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>>
>> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23.  No Plaintiff could be an adequate class representative in this situation as all Plaintiffs are civically committed and proceeding pro se.  No Plaintiff is an attorney and therefore cannot represent other SVPs.  *See McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966) (lay person lacks authority to appear as an attorney for others).  Accordingly, Plaintiffs' *Motion for Class Certification* (Docket No. 26) is denied.

Nonetheless, Plaintiffs and Defendants are encouraged to submit pleadings, motions and other correspondence to the Court as a group, when possible.  While each Plaintiffs' claim is individual, the Court recognizes the commonalities of Plaintiffs' complaints.  However, Plaintiffs must note that an essential element of any complaint is standing.  Plaintiffs' claims will be dismissed, no matter how valid, if any Plaintiff fails to plead to "have suffered, or will

**ORDER - 31 -**

imminently suffer, actual harm." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  Any claim that fails

to specifically identify a harm suffered by the individual Plaintiff will be dismissed for this

reason.

## II. CONCLUSION

For the reasons set forth above, except for claims related to personal computers,

Plaintiffs' complaints are dismissed, with leave to file an amended complaint by March 5, 2010.

Plaintiffs must individually demonstrate in their complaints how the conditions complained of

have resulted in a deprivation of their individual Constitutional rights.  *See Ellis v. Cassidy*, 625

F.2d 227 (9th Cir. 1980).  The complaints must allege, in terms specific to each individual

Plaintiff, how each named Defendant is involved. Plaintiffs should note that there can be no

liability under § 1983 unless there is some affirmative link or connection between Defendant's

actions and the claimed deprivation.  *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633

F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiffs shall organize their amended complaints by causes of action, with a separate

page devoted to each defendant and each cause of action for which the defendant is being sued

(for example, if one defendant is sued for three different causes of action, three separate pages

(one for each cause of action) should be used).  Plaintiffs shall specify which of them is alleging

each cause of action.

For each cause of action against each defendant, the plaintiff shall state the following: (1)

the name of the person who personally participated in causing the alleged deprivation of his

constitutional rights if the claim is for monetary damages against a defendant in his/her personal

capacity,[2] or, the name of the person who has authority over the policy at issue and who could effectively issue orders within the prison if the court were to rule in plaintiff's favor if the claim is for injunctive relief against a defendant in his/her official capacity; (2) facts showing the person is a state actor or facts showing that a non-state actor conspired with state actors to violate Plaintiff's civil rights;[3] (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional provision Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met;[4] (6) the injury or damages Plaintiff personally suffered; and (7) the particular type of relief he is seeking from each defendant.

Plaintiffs' amended complaint(s) should be brief. Fed. R. Civ. P. 8(a). However, the complaint(s) must state what each named Defendant did that led to the deprivation of Plaintiff's

---

[2] There are two theories under which a state official may be held liable for actions taken in his or her individual capacity: (1) personal involvement in the act that caused the injury; or (2) sufficient causal connection between the official's act or omission and the injury. There is no "respondeat superior" liability under § 1983, meaning that supervisors are not liable for their subordinate employees' actions simply because they are supervisors. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the state official did not have personal involvement in the alleged constitutional deprivation, then plaintiff must allege facts showing that the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Id.*, 880 F.2d at 1045.

[3] "Acting under color of state law" is different from being sued in one's "official capacity." Acting under color of state law generally means that a person was working for or acting on behalf of a governmental entity. This is an essential element of a civil rights claim against defendants in either their official capacity (injunctive relief) or their personal capacity (monetary relief), meaning that either type of claim cannot proceed unless the plaintiff alleges that the defendant was acting under color of state law. Generally, this element is met if the plaintiff alleges the defendant's job title and the governmental entity for which he or she worked at the time of the alleged violation.

[4] For example, Plaintiffs must allege facts setting forth the elements of an Eighth Amendment claim or a First Amendment claim.

ORDER - 33 -

Constitutional or other federal right.  *Hydrick*, 500 F.3d 978, 987–88 (9th Cir. 2007).  Although

accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the

speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations

omitted).

 Finally, Plaintiffs are further advised that an amended complaint supercedes the original

complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), and must be

"complete in itself without reference to the prior or superceded pleading,"  Local Rule 15-220.

Plaintiffs are admonished that all causes of action alleged in an original complaint that are not

alleged in an amended complaint is waived.  *King*, 814 F.2d at 567

## II.  ORDER

 Based on the foregoing, it is HEREBY ORDERED that:

1. With the exception of Plaintiffs' claims regarding personal computers and related electronic media, Plaintiffs' complaints are dismissed, with leave to amend;

2. The Clerk's Office shall send Plaintiffs a civil rights complaint form;

3. By March 5, 2010, Plaintiffs must either:

 a. File an amended complaint curing the deficiencies identified by the Court in this order, or

 b. Notify the Court in writing that they do not wish to file an amended complaint and wish only to proceed on the claims identified by the Court as viable/cognizable in this order;

/ / /

/ / /

ORDER - 34 -

4.      If any Plaintiff fails to comply with this order, their action will be dismissed for

failure to obey a court order and for failure to state a claim.



DATED:  **February 7, 2010**.

Honorable Larry M. Boyle
United States Magistrate Judge

**ORDER - 35 -**