UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

GEORGE N. ALLEN, et al.,

                Plaintiff,

      v.

STEPHEN MAYBERG, et al.,

                Defendants.

(lead)

Including the following member cases:
1:-07-CV-00427-BLW (Gonzales)
1:07-CV-00849-BLW (Brown)
1:07-CV-00850-BLW (DeBerry)
1:07-CV-00897-BLW (Scott)
1:07-CV-00913-BLW (Smith)
1:07-CV-00985-BLW (Scott)
1:08-CV-01196-BLW (Chaney)
1:08-CV-01339-BLW (Robinson)
1:09-CV-01890-BLW (Rhoden)
1:09-CV-02153-BLW (Frazier)
1:10-CV-01973-BLW (Vasquez)

Case No. 1:06-CV-01801-BLW-LMB
(consolidated cases)

**MEMORANDUM DECISION AND
ORDER**

Pending before the Court is Plaintiff's Motion for Preliminary Injunction. (Dkt.

96.) The Motion is fully briefed, and no reports of progress regarding settlement

negotiations have been filed regarding the pending Motion, or the merits of this case. This

case has been pending for nearly six years without resolution of any issue.

**MEMORANDUM DECISION AND ORDER - 1**

Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding delay, the Court shall decide this matter on the written motions, briefs and record without oral argument. Accordingly, the Court enters the following Order.

## FACTUAL AND PROCEDURAL BACKGROUND

Beginning in December of 2006, Plaintiffs, who are statutorily-designated sexually violent predators ("SVP") committed to the Coalinga State Hospital ("CSH") after completion of their criminal sentences, filed a number of lawsuits against officials at CSH (collectively, "Defendants") challenging the conditions of their civil confinement. Plaintiffs allege that a number of policies and procedures at CSH violate their constitutional rights. These policies include restrictions on visitation, restriction of movies for private viewing, searches of dorms, confiscation and restriction of possession of personal items (including personal computers and electronic gaming devices, noises within living quarters via the PA system, use of law enforcement officers rather than medical professionals in patient treatment plans, searches of mail, lack of job assignments and training, and residents' wages. Plaintiffs, whose lawsuits have been consolidated for ease of administration, seek compensatory, declaratory, and injunctive relief.

CSH patients, including Plaintiffs, were permitted to purchase and possess personal laptop computers in July 2006, but CSH imposed strict guidelines to regulate the types of hardware, software, and accessible and stored information on the computers.

**MEMORANDUM DECISION AND ORDER - 2**

(Declaration of CSH Assistant Deputy Director George Maynard, ¶ 3, Dkt.100-1.) In particular, CSH staff disabled the wireless capability of all incoming computers ordered by patients, pursuant to Administrative Directive 654. (*Id*., Exhibit 1, Dkt. 100-1.)

In February 2007, CSH patients were notified that "[d]ue to a high rate of policy violations," an immediate moratorium was being placed on purchases of patient computer equipment and software. (*Id*., ¶ 7, Exh. 4, Dkt. 100-1, p. 29.) The risks identified were widespread distribution of pornographic material, audio recording of staff and patient conversations, widespread illegal distribution and sharing of copyright protected materials, widespread distribution and sharing of data encryption and concealing software, and computerized street map and atlas software. (*Id*., ¶ 7, Exhibit 4, Dkt 100-1, p. 29.)

In October 2009, while the CSH patients' lawsuits were pending, the California Department of Mental Health ("CMH"), charged with managing CSH, took affirmative steps to implement Regulation 4350 (the "Regulation"). (Motion for Prelim. Inj., Dkt. 96, p. 2.) The Regulation prohibits patients from possessing "electronic devices with the capability to connect to a wired . . . and/or wireless . . . communications network to send and/or receive information." (Def. Memo., Dkt. 100, p. 9; *see* Cal. Code Regs. title 9 § 4350.)

On October 14, 2010, the Court appointed the Legal Clinic of the University of Idaho Law School as stand-by counsel to Plaintiffs (Dkt. 64) for the purpose of participating in a triage conference (combined case management and settlement

**MEMORANDUM DECISION AND ORDER - 3**

conference) with United States District Judge David O. Carter. (Dkt. 85.)

The triage conference was convened by Judge David O. Carter on December 19, 2011 and is now in recess. (Dkt. 96, p. 2.) Defendants previously agreed to a moratorium with respect to confiscation of Plaintiffs' electronic devices until the conclusion of the triage conference process or unless the court orders otherwise, but have recently determined that the Regulation would be implemented without regard to settlement negotiations. (*Id*.) As a result, on April 16, 2012, Plaintiffs filed a motion for preliminary injunction pursuant to Federal Rule of Civil Procedure 65 to prevent CMH from implementing the Regulation until the legal challenges to CMH's policies restricting access to personal computers and electronic devices are resolved by trial or settlement agreement. Plaintiffs are not seeking internet access, but only to keep their computers and electronic devices that are internet-disabled. Their claims are based upon the Fourteenth Amendment's Due Process Clause.

## MOTION FOR PRELIMINARY INJUNCTION

1.   **Standard of Law**

   A.   *Preliminary Injunctive Relief Standard of Law*

To be entitled to preliminary injunctive relief, the movant must show each of the following: (1) a likelihood of success on the merits; (2) that irreparable harm is likely, not just possible, if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008). In applying the *Winter* test, the United States Court

**MEMORANDUM DECISION AND ORDER - 4**

of Appeals for the Ninth Circuit has instructed that, if a party cannot show a likelihood of success on the merits, but raises "serious questions going to the merits," a preliminary injunction may issue if the balance of equities tips "sharply" in the party's favor, and the other two elements (irreparable harm and public interest) are also satisfied. *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (holding that this aspect of the Ninth Circuit's sliding scale test survived *Winter*).

**B.    *Due Process Standards of Law***

The Fourteenth Amendment prohibits the government from depriving an individual of life, liberty, or property without due process of law. The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process.

(1)    Procedural Due Process Standard of Laws

The right to *procedural* due process prohibits the government from depriving an individual of a liberty or property interest without first following the proper procedures. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974), *abrogated by Sandin v. Conner*, 515 U.S. 472 (1995) (prison disciplinary context). To prevail on a procedural due process claim, a litigant must show (1) that he was deprived of a constitutionally-protected liberty or property interest; (2) "what process is due"; and (3) that he was denied adequate due process under the appropriate standard. *Brewster v. Board of Educ. of Lynnwood Unified School Dist.,* 143 F.3d 971, 982 (9th Cir. 1998). To determine "what process is due," the Court balances three factors:

**MEMORANDUM DECISION AND ORDER - 5**

First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id*. at 983 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)). Stated a simpler way, due process requires that "a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

(2)   Substantive Due Process Standard of Law

The right to *substantive* due process protects individuals from being deprived of certain fundamental rights; in other words, no amount of government process can justify the taking of these important rights. *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988). Substantive due process rights include those rights that are clearly enumerated in the Bill of Rights or that have been recognized by the United States Supreme Court as requiring constitutional protection, such as "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994).[1]

Of particular importance here, several other substantive due process rights that protect the rights of detained citizens emanate from the Fourteenth Amendment. One

---

[1] Substantive due process also protects against government conduct that is so egregious that it "shocks the conscience," even where the conduct does not implicate any specific fundamental right. *See United States v. Salerno*, 481 U.S. 739, 746 (1987).

**MEMORANDUM DECISION AND ORDER - 6**

protection is that "[a]t the least, . . . the nature and duration of a commitment [must] bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Another protection is that detainees "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

When a detainee alleges that he is subjected to a regulation that amounts to punishment even though the intent of the regulation is not expressly punitive, the Court must determine whether a detainee's right to be free from punishment has been violated by analyzing whether (1) there is a legitimate, non-punitive government purpose for the regulation; and (2) whether the regulation "appears excessive" in relation to the stated legitimate government purpose. *Bell*, 441 U.S. at 539; *United States v. Salerno*, 481 U.S. 739, 747 (1987).

As to the first prong of this test, the United States Court of Appeals for the Ninth Circuit has determined that "[l]egitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining [institutional] security, and effective management of a detention facility." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

As to the second prong of the test, the Ninth Circuit has explained: "A reasonable relationship between the governmental interest and the challenged restriction does not require an 'exact fit,' nor does it require showing a 'least restrictive alternative.'" *Valdez v. Rosenbaum*, 302 F.3d 1039, 1046 (9th Cir. 2002) (citation omitted). "Otherwise, every administrative judgment would be subject to the possibility that some court somewhere

**MEMORANDUM DECISION AND ORDER - 7**

would conclude that it had a less restrictive way of solving the problem at hand." *Id*. (internal quotation marks omitted).

Generally, the Fourteenth Amendment standard for detention conditions is a "more protective" standard than the Eighth Amendment, *Jones v. Blanas,* 393 F.3d at 931, and the United States Supreme Court has directed that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). A simple way to restate this principle is that "when a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" *Jones*, 393 F.3d at 932 (citing *Sharp v. Weston*, 233 F.3d 1166, 1172-73 (9th Cir. 2000)).[2]

Several courts have addressed whether a ban on personal computers and electronic gaming devices in civil commitment settings violates the Constitution. In *Endsley v. Luna*, 2009 WL 3806266 (C.D. Cal. 2009), the United States District Court for the Central District of California granted summary judgment to state hospital officials,

---

[2] Even though the right to constitutionally-acceptable conditions of confinement for the substantive rights of civilly-committed persons in state custody arises from the Due Process Clause of the Fourteenth Amendment and not the Cruel and Unusual Punishment Clause of the Eighth Amendment, the Ninth Circuit Court of Appeals has noted that "because the contours of the Eighth Amendment are more defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied" to civil detainee cases. *Hydrick v. Hunter*, 500 F.3d 978, 994, 998 (9th Cir. 2007) *(vacated on other grounds by Hunter v. Hydrick*, 129 S. Ct. 2431, (2009) (mem.)).

**MEMORANDUM DECISION AND ORDER - 8**

concluding that a civil detainee (who was committed to the state hospital following his acquittal by reason of insanity from a charge of first degree murder) had no constitutional right to own a personal computer, *aff'd, Endsley v. Luna*, 2012 WL 1926040 (9th Cir. 2012) (unpublished) ("The district court properly granted summary judgment on Endsley's substantive due process claim because Endsley failed to raise a genuine dispute of material fact as to whether the denial of his requests for a personal computer was reasonably related to the legitimate, non-punitive governmental interests of safety and security.").

In *Pegue v. Kibby*, 2011 WL 6179207 (C.D.Ill.), the United States District Court for the Central District of Illinois determined that a civilly-detained SVP had no First Amendment or Fourteenth Amendment equal protection right to own a personal computer. *See also Smego v. Ashby*, 2011 WL 6140661 (C.D.Ill.) (no constitutional claim arising from regulation banning personal computers for civilly-detained SVPs). *See Spicer v. Richards*, 2008 WL 3540182, at *7-8 (W.D.Wash. Aug.11, 2008) (holding that state facility for civil detainee's "ban on the possession of the electronic devices [including computers] is reasonably related to the security and safety risks posed to [its] residents, staff, visitors, and the public" and therefore not violative of civil detainee's substantive due process rights); *Carmony v. County of Sacramento*, 2008 WL 435343, at *18 (E.D. Ca. Feb. 14, 2008) (no First Amendment right to computer or internet access); *Belton v. Singer*, 2011 WL 2690595, at *12-13 (D.N.J. July 8, 2011) (SVPs have no First

**MEMORANDUM DECISION AND ORDER - 9**

or Fourteenth Amendment right to use memory sticks, flash drives, thumb drives, external drives, data storage devices, X-box Elite, Play Station 3, or Wii gaming system). While these are not cases of precedential value, the Court agrees with the reasoning and outcome of each.

**2.     Scope of Request for Preliminary Injunctive Relief**

The scope of the preliminary injunction request is to permit Plaintiffs Allen, Frazier, and Rhoden (not to permit all patients living at CSH) to keep their personal computers and other electronic devices that CSH previously authorized Plaintiffs to purchase and that CSH disabled, so that the computers and devices were rendered incapable of being connected to a wired or wireless communications network to send or receive information. Plaintiffs assert that they, themselves, have not violated CSH policy by using their computers in unlawful ways or by trying to connect them to a communications network to send or receive information.

Plaintiffs' personal computers are presently incapable of being connected to a wired or wireless communications network to send or receive information "because CSH staff, pursuant to Administrative Directive No.654, disabled the computers' wireless Internet capabilities and plugged access ports with epoxy resin."[3] In fact, all CSH patients who own personal computers were required to agree to have the wireless capabilities on their personal computers disabled as a condition of being permitted to own, possess, and

---

[3] (Plaintiff Daryell Frazier Verified Statement, ¶ 5, Dkt. 96-3, p. 2.)

**MEMORANDUM DECISION AND ORDER - 10**

use the personal computers.

Notwithstanding the disabling of the computers, some patients–not Plaintiffs–have nevertheless been able to re-enable or newly enable their computers to receive wireless or wired internet transmissions. (CSH Chief of Protective Services and Security Ronnie Harmon Declaration, Dkt. 100-2.) The Regulation also targets gaming systems with the *capability* of Internet access are targets of the Regulation.

3.     **Discussion of Request for Preliminary Injunctive Relief**

   A.     *Likelihood of Success on the Merits*

Based on the legal standards set forth above, the Court finds that Plaintiffs have not shown a likelihood of success on the merits of their claims that their constitutional rights are violated by disallowing personal computers and gaming systems that are capable of being connected to a communications network, as defined in the Regulation.

(1)     Procedural Due Process

Defendants argue that Plaintiffs cannot show they have a constitutionally-protected liberty or property interest in their computers or gaming equipment, the threshold requirement to pursue a procedural due process claim. The Court agrees that no case law exists to support a claim that Plaintiffs have a liberty interest in computers or gaming equipment, such that it would be protected by procedural due process.

Defendants further argue that, even assuming Plaintiffs have a protected property interest in the computers and gaming systems they presently own, CSH has met due process requirements for disallowing use or possession of the items.

Applying the three factors cited in *Brewster* to determine "what process is due" under the circumstances at CSH, the Court concludes that Plaintiffs have not shown a likelihood of success on the merits of a procedural due process claim. First, the private interest that will be affected by the official action is minimal – Plaintiffs will be forced to use State-owned computers rather than the personal computers they already own, and Plaintiffs will be able to use only pre-internet gaming devices that have no capability of being connected to the internet, rather than newer gaming systems they may already own. Second, the risk of erroneous deprivation of such interest through the procedures used is almost non-existent–all CSH patients have had several years' notice that the Regulation would be implemented, and a fair procedure for storing or sending out the equipment at CSH's expense has been published to all patients. Third, because the notice has been

**MEMORANDUM DECISION AND ORDER - 12**

timely and adequate, the Government's interest would not be served by adding or substituting any procedural requirements. *See Brewster*, 143 F.3d at 983 (relying on *Matthews v. Eldridge*, 424 U.S. at 335). Further, patients have had ample opportunity to be heard on their opposition to implementation of the Regulation "at a meaningful time and in a meaningful manner," both in administrative settings and in court actions, such as this one. *See Armstrong v. Manzo*, 380 U.S. at 552.

(2)     Substantive Due Process

Construing Plaintiff's claims under the Substantive Due Process Clause, the Court must first determine whether Plaintiffs are being treated in a punitive manner. Defendants have come forward with sufficient evidence showing that the Regulation was not expressly intended to punish Plaintiffs or any of the CSH patients, but that, after adequate administrative study and contemplation, it was promulgated for reasons of (1) protecting the public; (2) protecting staff; (3) protecting the patients' interest in privacy of their medical and institutional records; (4) reducing the staff hours required to monitor personal computers and gaming systems for violations; and (5) preventing illegal and criminal activity. (Maynard Decl. Dkt. 100-1; Harmon Decl., Dkt. 100-2.)

Prior to developing the Regulation, Defendants identified the following risks within the system: widespread distribution of pornographic material, audio recording of staff and patient conversations, widespread illegal distribution and sharing of copyright protected materials, widespread distribution and sharing of data encryption and

**MEMORANDUM DECISION AND ORDER - 13**

concealing software, and possession of computerized street map and atlas software.

(Maynard Decl. ¶ 7, Exhibit 4, Dkt 100-1, p. 29.)

Defendants assert that the Regulation was produced in response to the above risks,

for non-punitive safety and security reasons:

> The adoption of this regulation was initiated due to the significant policy violations noted above and only after the CDMH Hospital Automation Committee conducted an enterprise risk assessment relative to patient-owned electronic devices. Maynard Decl., ¶ 8. The risk assessment determined that the continued use of and access to wireless-capable devices put CDMH at risk of patients gaining access to the internet and unsecured home and business wireless networks. *Id*. The proliferation of easily obtainable miniature storage and wireless devices created great risk of this access being attained by the patient population without staff knowledge or control. *Id*. The risk assessment and documented abuse at CSH demonstrated that ease in which patients could obtain wireless access despite the best efforts of staff to search for and control these types of intelligent devices and accessories. *Id*.

(Defendants' Memo., Dkt. 100, pp. 9-10, relying on Maynard Decl., Dkt. 100-1.)

Defendants cite to 60 reported incidents between July 2007 and November 2011,

involving improper use of computer equipment and electronic gaming devices, including

pornography, child pornography, fabricating official documents, accessing their victims

and potential victims via the internet, searching for personal information of staff via the

internet, drug trafficking, and illegally recording conversations. (CSH Protective Services

and Security Chief Ronnie Harmon Decl. ¶¶ 5, 10-11, Dkt. 100-2.) In addition, 30

investigations are underway. (*Id.*, ¶ 8.)

**MEMORANDUM DECISION AND ORDER - 14**

Defendants also declare that, without the Regulation in place, they do not have sufficient staff to monitor all of the personal computers, as well as investigate problems, such as those mentioned above. (*Id*., ¶¶ 9, 12.) In addition, installation of a wi-fi personal alarm network within the hospitals, which will eventually include an electronic patients' medical records system, would increase the risk that detainees will access the internet and sensitive medical records of other patients. (Maynard Decl., ¶ 16.)

The Court concludes that this evidence meets the first prong of the *Bell* test, showing that there are legitimate, non-punitive institutional reasons supporting the ban of personal computers and gaming devices that can be equipped to access the internet. *See Bell*, 441 U.S. at 539.

Thus, Plaintiffs must show that, even though the Regulation has been promulgated for a non-punitive purpose, it is excessive in relation to that purpose. *See Bell*, 441 U.S. at 539. Plaintiffs first counter Defendants' statistics by pointing out that 60 incidents in a four-and-a-half-year period amounts to a little over 13 violations per year in a hospital with over 880 patients. Plaintiffs argue that this is not a sufficient quantity to ban all personal electronic devices. However, the moratorium on purchasing computers has been in place since February 2007, and so the 60 to 90[4] incidents were found among only those patients who purchased computers prior to February 2007.

---

[4] An additional 30 instances were under investigation at the time of Defendants' response. (Harmon Dec., ¶ 8.)

**MEMORANDUM DECISION AND ORDER - 15**

In addition, diverse types of violations have been found–from hardware to software violations–supporting Defendants' position that a large amount of staff attention must be devoted to monitoring and investigating the violations. Further, some of the violations pose great risks of harm, such as contacting victims of the SVPs' crimes, committing other crimes, falsifying official documents, and discovering personal information of staff and the family members of staff. In addition, the amount of monitoring needed for all of the computers remains the same (100% of the computers must be monitored), even though only 60 to 90 incidents may have occurred. Considering all of these factors, the Court finds that the Regulation is not excessive in scope.

Using another angle to challenge the Regulation, Plaintiff Daryell Frazier alleges that their computers are used for "personal purposes, including treatment and therapy," and, if the confiscation occurs, Plaintiffs will not have an adequate opportunity to participate in the treatment and therapy necessary to move toward release from civil detainment. (Daryell Frazier Verified Statement, ¶ 8, Dkt. 96-3, p. 2.)

Similarly, Plaintiff George Allen asserts that he uses his two Nintendo Gameboy devices "for purposes of entertainment and social interaction, activities which are therapeutic in nature." (George Allen Verified Statement, ¶ 7, Dkt. 96-2.) Allen asserts that confiscation of these devices will cause him irreparable harm, "including but not limited to the extension of . . . confinement at CSH . . . because the use of hand-held electronic devices substantially contributes to . . . therapeutic treatment, providing both

**MEMORANDUM DECISION AND ORDER - 16**

entertainment and the opportunity for social interaction." (*Id.*, ¶ 11.)

These arguments track Ninth Circuit case law declaring the existence of a substantive due process right to receive treatment and therapy in state civil commitment settings. In both *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980), and *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000), the Ninth Circuit held that "the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released."[5] 233 F.3d at 1172.

The Court agrees with Defendants' position that there is insufficient evidence in the record showing that personal computers and gaming devices are required for therapy and treatment. Dr. Jerry Kasdorf, the psychologist primarily responsible for developing the new sex offender treatment program at CSH, declares that there is no known correlation between a patient's success in completing sex offender treatment and personal ownership of computers or personal use of electronic gaming devices. (Jerry Kasdorf Declaration, ¶¶ 6, 10, Dkt. 100-3.)

While Plaintiffs *can* use their personal computers for treatment, such as journaling activities and biographies, these tasks can also be done by hand or on CSH computers.

---

[5] The United States Supreme Court has, to date, determined only that a civilly-committed patient's "liberty interests require the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint," not having been presented with facts to permit that Court to decide whether there is a constitutional right to rehabilitation. *See Youngberg v. Romeo*, 457 U.S. 307, 316-19 (1982).

**MEMORANDUM DECISION AND ORDER - 17**

(*Id.*, ¶ 6.) Dr. Kasdorf notes that there is no requirement or expectation that patients complete their assignments using a personal computer, and no advantage is given to patients who prepare their assignments on a computer. (Kasdorf Decl., ¶¶ 6, 8.) For example, while the former treatment program required patients to write an extensive autobiography, the current treatment program requires only a five-page autobiography. Required journaling and preparing an autobiography can be done by computer or in handwriting. (*Id.*, ¶¶ 7-8.)

Plaintiffs also fail to show in what manner access to the CSH computers is limited so as to negatively affect treatment. They also fail to bring forward any mental health professional's opinion that owning personal computers or using electronic gaming devices are essential to a sex offender's therapeutic treatment.[6]

Finally, Plaintiffs argue that they themselves have not transgressed any CSH rules regarding computer and electronic gaming devices and have not enabled or attempted to re-enable internet access on their computers and gaming devices, and, thus, the ban is too wide. This argument does not address the facility's need to monitor all personal computers at all times, with the attendant staff time and costs. Even if facility staff monitored all computers and banned the computers of only those patients who broke the

---

[6] The Court recognizes that it is contested whether CSH actually has a sex offender treatment plan for each patient, and whether CSH provides alternative therapeutic social interaction opportunities for Plaintiffs–which are different and far more serious issues than whether the patients can own computers and gaming devices–but those factual questions are not at issue today.

**MEMORANDUM DECISION AND ORDER - 18**

rules, there would be an endless stream of new patients with new computers replacing those patients whose computers had been confiscated.

This Court agrees with other courts that have determined, that "administrators are not required to individually test each electronic device's capability," but that a general regulation is appropriate to govern all patients' electronic devices. *Schloss, et al., v. Ashby*, 2011 WL 4804868, at *5 (C.D. Ill. 2011) (First Amendment *Turner v. Safley* analysis context). Rather, administrators "need only articulate a 'valid, rational connection' between the ban and the security concern" for it to apply to all patients in the facility. *Id*.

Defendants' argument that a facility-wide ban is necessary under the circumstances is persuasive:

> Allowing internet access places an undue burden on institutional staff for searching and preventing patients from possession of contraband materials, contacting non-approved contacts and accessing potential victims. If the restriction on possession of computers is lifted, it is expected that there will be dramatic increase in the number of patient-owned computes at the facility. There are insufficient resources and a lack of staff expertise to monitor and police a large number of patient-owned computers, not to mention associated devices and media. This would compromise the security of the facility, treatment efforts, and the protection of the public.

(Harmon Decl., ¶ 12.)

**MEMORANDUM DECISION AND ORDER - 19**

Based on all of the foregoing, the Court agrees that Plaintiffs have not shown a likelihood of success on the merits of the Fourteenth Amendment claim.[7] Therefore, this factor favors Defendants' position.

## B.    *Likelihood of Irreparable Harm*

The second *Winter* factor for a preliminary injunction is that irreparable harm is likely, not just possible, if the injunction is not granted. Once the Regulation is implemented, Plaintiffs will be required to store or ship out (at CSH expense) any computers or electronic gaming equipment that fit within the Regulation. (CSH Administrative Directive 626, Dkt. 96-5.)

Plaintiffs argue that confiscation of their computers would cause irreparable harm, "including but not limited to the indefinite extension of [] confinement at CSH[,] . . .because therapy and treatment are facilitated by the use of computers, and patients' access to computers owned by CSH/DMH is significantly restricted by a lack of availability." (Frazier Statement, ¶ 11, Dkt. 96-3, p. 2.)

There is insufficient evidence in the record showing that use of CSH computers is severely limited. Defendants assert that 78 computers are available to patients for treatment purposes, and additional computers are available for other purposes, including "education, computer skills development, cognitive remediation groups, patient

---

[7] Plaintiffs fail to state a claim under the Fifth Amendment's Due Process Clause, which applies solely to the federal government. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir.2008).

**MEMORANDUM DECISION AND ORDER - 20**

government, graphic arts, and legal research." (Maynard Decl., ¶ 11.)

There is also insufficient evidence in the record to show that lack of personal computers or gaming devices would jeopardize patient treatment or lengthen the stay of any patient, because no evidence in the record reflects that treatment and therapy are dependent on use of these items. While it is true that Plaintiffs will be irreparably harmed to the extent that they will no longer be able to use those electronic items they previously purchased until they are released from custody, it is not true that Plaintiffs' treatment path will be irreparably harmed or that Plaintiffs will have no use of computers. Therefore, this factor weighs only slightly in favor of Plaintiffs.

C.     *The Balance of Equities and Public Interest*

Plaintiffs have not shown that the balance of equities tips in their favor or that the public interest favors granting preliminary injunctive relief. At stake are the competing public interests of ensuring that civil detainees enjoy their constitutional freedoms to the extent possible in a non-punitive detention setting, and ensuring that the public at large remains protected from SVPs. The public also has an interest in ensuring that SVPs are not permitted to engage in activities that would thwart their rehabilitation and treatment, such as viewing pornography or engaging in internet communications with minors, which weighs against Plaintiffs' position.

Also weighing against Plaintiffs' position is that the patients have public computers available for their use, although the computers are shared among many

patients. While journaling and self-analysis, which is part of treatment, is easier and

quicker on a computer, the Constitution does not require that the easiest, fastest method

of treatment be used. Handwriting is readily available, even if a public computer is not.

In addition, more taxpayer dollars would have to be allocated to monitoring of

personal computers and gaming devices if the Regulation is not implemented, which is

contrary to the public interest of providing adequate but cost-effective housing for SVPs.

Overall, these factors weigh in favor of Defendants.

**4.     Conclusion**

Plaintiffs have not shown that they are entitled to a preliminary injunction. As a

result, Defendants may implement the Regulation, providing adequate means for

Plaintiffs to safeguard or ship out their computers and electronic devices that fit within

the Regulation.

**ADDITIONAL SCREENING UNDER 28 U.S.C. § 1915 RE: FOURTEENTH
AMENDMENT COMPUTER AND GAMING DEVICE CLAIMS**

Title 28 U.S.C. § 1915(e)(2) authorizes the Court to dismiss an in forma pauperis

complaint *at any time* if the claims appear subject to dismissal. Having thoroughly

reviewed the parties' extensive submissions with an eye toward whether Plaintiffs have

stated a claim upon which relief can be granted with their allegations that the Regulation

banning internet-capable personal computers and gaming devices violates the Fourteenth

Amendment substantive due process or procedural due process protections claims, the

Court concludes that Plaintiffs have failed to state such a claim. Therefore, in the interest

**MEMORANDUM DECISION AND ORDER - 22**

of streamlining this litigation and narrowing the issues, all such claims are dismissed.

## SCHEDULING ORDER

While the Court encourages the parties to continue to explore settlement options and to contact Judge Carter if they would like him to preside over further settlement conferences, this case is ripe for discovery and dispositive motion deadlines, which the Court will now set. The scheduling order addresses current pro bono counsel representation, future pro bono representation, interim pro se representation, expert witnesses, disclosure, discovery, and dispositive motions.

## ORDER

**IT IS ORDERED:**

A.    Plaintiff's Motion for a Preliminary Injunction (Dkt. 96) is DENIED. In
         addition, all Plaintiffs' Fourteenth Amendment substantive due process and
         procedural due process claims based upon confiscation of personal
         computers and gaming devices that fit within the Regulation, contained
         within their Complaints or Amendment Complaints, are DISMISSED for
         failure to state a claim upon which relief can be granted, pursuant to 28
         U.S.C. § 1915(e)(2).

B.    Given the limited nature of the appointment of counsel for Plaintiffs, within
         30 days after entry of this Order, Plaintiff's counsel shall give notice of
         whether they wish to remain as counsel for Plaintiffs on this case and, if so,

in what capacity Defendants and the Court should deal with them and/or the pro se Plaintiffs (*e.g.*, stand-by counsel or counsel of record). If, at any point in time, Plaintiffs do not have counsel, they are expected to continue to pursue their individual but consolidated cases pro se–meaning they can share discovery and litigation strategies, and sign joint documents (each on his own behalf only), but they cannot represent each other–until or unless new counsel is appointed for them.

C.    The pro bono counsel coordinator for the Eastern District of California shall search for local California counsel, as either replacement or co-counsel, for Plaintiffs, and is requested to update the Court by ex parte letter once a month on the status of the search for counsel until new counsel is found. The Clerk of Court shall provide a copy of this Order to the pro bono counsel coordinator via email or mail.

D.    The Amended Complaint of Harold Carmony (Dkt. 53), and all claims associated with 1:07-CV-01558-BLW, are DISMISSED, because Mr. Carmony is deceased, and his estate has not elected to go forward with Mr. Carmony's claims within the time frame set by the Court. (*See* Dkt. 84).

**IT IS ORDERED** that the following pre-trial schedule shall govern this case:

1.    **Disclosure of Relevant Information and Documents:** If the parties have not already done so, on or before **October 14, 2012**, the parties shall

provide each other with relevant information and documents pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. In camera documents are to be filed ex parte under seal, and not provided by email or mail.

2.    **Completion of Discovery and Requests for Subpoenas:** All discovery shall be completed on or before **February 28, 2013**. Discovery requests must be made far enough in advance to allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date. Discovery is exchanged between parties, not filed with the Court. The Court is not involved in discovery unless the parties are unable to work out their differences between themselves as to whether the discovery responses are appropriate. In addition, all requests for subpoenas duces tecum (pretrial production of documents by nonparties) must be made by **January 31, 2013**. No requests for subpoenas duces tecum will be

entertained after that date. (Subpoena requests for trial appearances of witnesses shall not be filed until the case is se for trial.) To obtain a subpoena duces tecum for production of documents by nonparties, Plaintiff must first submit to the Court the names, addresses, and the type of information sought from each person or entity to be subpoenaed, and Plaintiff must explain the relevance of the items requested to the claims. The Court will then determine whether the subpoenas should issue.

3.   **<u>Depositions</u>**: Depositions, if any, shall be completed on or before **February 28, 2013**. If Defendants wish to take the deposition of Plaintiff or other witnesses who are incarcerated, leave to do so is hereby granted. Any such depositions shall be preceded by ten (10) days' written notice to all parties and deponents. The parties and counsel shall be professional and courteous to one another during the depositions. The court reporter, who is not a representative of Defendants, will be present to record all of the words spoken by Plaintiff (or other deponent), counsel, and any other persons at the deposition. If Plaintiff (or another deponent) wishes to ensure that the court reporter did not make mistakes in transcribing the deposition into a written form, then Plaintiff can request the opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what Plaintiff believes was said. If Plaintiff wishes to take depositions, Plaintiff

must file a motion requesting permission to do so, specifically showing the ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

4.      **<u>Dispositive Motions</u>:** The dispositive motion deadline shall be **June 28, 2013.** However, because of the magnitude of this case, the parties are encouraged to file early partial motions for summary judgment to address only certain claims or parties, as may be appropriate. (The Court may later limit this part of the Order if the result is unwieldy.) After the parties have provided additional evidence to the Court, usually at the summary judgment stage, the Court will sua sponte evaluate the evidence to determine whether appointment of a Rule 706(a) court's expert would aid the Court on any complex issues that arise, with the cost to be apportioned among the parties. Otherwise, all parties are encouraged to find and hire their own expert witnesses at their own cost to aid them in their respective positions. Fed. R. Evid. 706(d).

**MEMORANDUM DECISION AND ORDER - 27**

5.        Alternatively, if counsel for the parties wish to propose a different set of

pretrial management procedures or pretrial schedule, they may file a stipulation

outlining such within 30 days after entry of this Order.


DATED:  **September 5, 2012**



Honorable B. Lynn Winmill
Chief U. S. District Judge


**MEMORANDUM DECISION AND ORDER - 28**