# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE N. ALLEN, et al., <br><br> Plaintiff, <br><br> vs. <br><br> MAYBERG, et al., <br><br> Defendants. | 1:06-cv-01801-AWI-GSA-PC <br> Appeal case number 06-16560 <br><br> **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF JACKIE ROBINSON'S MOTION FOR LEAVE TO AMEND BE DENIED** <br> **(ECF No. 243.)** <br><br> **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.  INTRODUCTION**

On December 23, 2015, plaintiff Jackie Robinson ("Robinson") filed a motion for leave to file a Fourth Amended Complaint.  (ECF No. 243.)  On August 16, 2016, this court denied the motion.  (ECF No. 249 at 7-9.)  On appeal, the Ninth Circuit remanded the case to the district court for reconsideration of Robinson's motion for leave to amend which is now before the court.  (ECF No. 264.)

1

## II. RELEVANT PROCEDURAL HISTORY

Beginning in 2006, several Sexually Violent Predators (SVPs),[1] civilly detained at Coalinga State Hospital ("CSH") in the custody of the California Department of Mental Health ("DMH"), a predecessor of the Department of State Hospitals ("DSH"), filed complaints in federal court alleging various conditions of confinement claims.[2] Related cases were consolidated with the present case. The undisputed facts in this case were set forth on August 16, 2016 in the court's order granting summary judgment, as follows in relevant part.

> Beginning in 2006, several SVPs at the Department of State Hospitals-Coalinga ("DSH-C"), including Plaintiffs Allen, DeBerry, Frazier, and Robinson, filed complaints in federal court alleging various conditions of confinement claims. Related cases were consolidated and the parties participated in a triage conference as to some of Plaintiffs' claims, including the claims at issue here. Those claims came to be known as Plaintiffs' "computer claims." Generally, Plaintiffs allege that the confiscation and restriction of possession of their electronic devices violates their constitutional rights. With regard to the computer claims, the relevant facts are not materially in dispute.
>
> Plaintiffs Allen, Frazier, DeBerry, and Robinson are patients at DSH-C and are confined there pursuant to the Sexually Violent Predator Act ("SVPA"). In late July of 2006, DSH-C patients were—for the first time—allowed to own and possess their own laptop computers through a test program provided by Administrative Directive ("AD") 654.[3] AD 654 also prohibited devices or

---

[1] A sexually violent predator ("SVP") is an individual previously "convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code. § 6600(a)(1).

[2] Robinson filed his original Complaint on September 8, 2008, in case number 1:08-cv-01339-BLW-WMB-PC ("08-1339"); Robinson v. Joya, et al. (ECF No. 1 in case 08-1339.) On August 6, 2010, Robinson's case was "consolidated" with the present case. (ECF No. 47 in case 08-1339; ECF No. 55 in the present case).

[3] In 2003, before the AD 654 test program was implemented, CSH enacted section 891 of title 9 of the California Code of Regulations to prohibit all patients in its custody from accessing the internet. Section

equipment that enabled private communications with others; as well as games, movies, or electronic images that depicted overt sexual acts or violence with adults and children. Finally, AD 654 also expressly reserved the administration's right to prohibit items deemed to be a safety or security threat.

Following the implementation of this test program, numerous safety and security violations were discovered, including: patients' widespread distribution of pornographic material, including child pornography; audio recordings of staff and patient conversations within the hospital; widespread distribution and sharing of data encryption software; widespread distribution and sharing of data concealing software; and computerized street map and atlas software. According to the Plaintiffs, it was hospital staff that sold the illicit devices to patients at a premium. Eventually, a risk assessment was conducted at DSH-C. The results indicated that patients' continued use of their existing wireless-capable devises put the facility at risk of patients gaining internet access, and gaining home and business network access.

Only seven months after AD 654 was implemented, on February 28, 2007, a high rate of security risks and incidents forced a moratorium on the patient-owned computer policy. Over two years later, on October 26, 2009, Regulation 4350—a statewide emergency regulation—was issued. See Cal. Code Reg., Title 9, § 4350. Codified in the California Code of Regulations, Regulation 4350 prohibits patients at all of DSH's facilities from possessing devices with wired or wireless internet connectivity capabilities. It read in relevant part:

---

891 states, "Non-LPS [Lanterman-Petris Short Act] patients shall not have access to the internet." 9 Cal. Code Regs. § 891. "Sex offenders involuntarily committed for indefinite time period under California's Sexually Violent Predator Act were not similarly situated to individuals involuntarily committed under California's Lanterman-Petris Short Act, which provided for initial detention of 72 hours for evaluation and treatment of a person who was a danger to himself or others or gravely disabled, with extensions, and renewable one-year periods of detention." Cal.Welf. & Inst.Code § 5000, Research References - Notes of Decisions - Construction with other laws, citing Taylor v. San Diego County, C.A.9 (Cal.) 2015, 800 F. 3d 1164, certiorari denied 136 S.Ct 1464.

3

> Contraband Electronic Devices with Communication and Internet Capabilities.
>
> Electronic devices with the capability to connect to a wired (for example, Ethernet, Plain Old Telephone Service (POTS), Fiber Optic) and/or a wireless (for example, Bluetooth, Cellular, Wi-Fi [], WiMAX) communications network to send and/or receive information are prohibited, including devices without native capabilities that can be modified for network communication. . . . Some examples of prohibited devices include desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistant (PDA), graphing calculators, and radios (satellite, shortwave, CB and GPS). 9 Cal. Code Regs. § 4350.

In February of 2010, DSH patients were notified of the anticipated implementation of Regulation 4350 and were asked to store, mail, or dispose of any prohibited items in order to become compliant. Some DSH-C patients who owned laptops prior to the moratorium were allowed to continue to use their devices, pending the outcome of this litigation. . . . DSH-C provides hospital-owned computers and word processing equipment for patient use for legal work, treatment, and other needs. (ECF No. 249 at 3-7.)

Even with the current moratorium on devices, at least 200 individuals at DSH-C have been involved with the possession or transmission of child pornography. And even with the present ban, and with the hospital IT department's preventative measures to restrict internet access on patient-owned devices, there are nonetheless still typically 2–3 new child pornography cases reported each month involving Coalinga patients and which require investigation. Sergeant Jerry DuVall is currently the only qualified examiner on staff in the DSH-C Department of Police Services who has the training and qualifications to conduct computer-crime investigations. His investigations are necessarily time-intensive, as he must conduct forensic examinations of cell phones, memory cards, hard drives, and laptops. In examinations with multiple devices, Sgt. DuVall's investigation may take months. In addition to investigations involving child pornography, Sgt. DuVall also has investigations involving: aerial photographs of DSH-C; local maps; partially created

|   | identification cards; photographs and videos of staff and other patients; |
|---|---|
| 1 | |
| 2 | recordings of conversations with staff and patients; access to websites where |
| 3 | child profiles are sought; searches for staff information on social media sites; |
| 4 | use of phone call anonymizers to block caller ID; emails and texts to arrange |
| 5 | narcotics trafficking; coordination of other contraband into the hospital; and |
| 6 | prohibited contact with children via video chat, voice chat, or phone calls. |

(ECF No. 249 at 3-6) (internal cites omitted).

On July 13, 2015, defendants Audrey King and David Landrum filed a motion for summary judgment (amended on July 15, 2015). (ECF Nos. 227, 228.) On December 23, 2015, Robinson filed a motion for leave to amend the complaint (ECF No. 243) and lodged a proposed Fourth Amended Complaint (ECF No. 244).[4]

On August 16, 2016, the court denied Robinson's motion for leave to amend, granted summary judgment to all of the defendants, and closed the case. (ECF Nos. 249-253.) Plaintiffs Allen, DeBerry, and Robinson each appealed the judgment to the Ninth Circuit where their three appeals were consolidated on December 22, 2016. (ECF No. 263.)

On October 29, 2018, the Ninth Circuit affirmed the district court's grants of summary judgment but vacated the denial of Robinson's motion for leave to amend and remanded the case for the district court to reconsider Robinson's motion. (ECF No. 264.)
The parties were allowed to file supplemental briefings. (ECF No. 265.) On January 4, 2019, Robinson filed his supplemental briefing (ECF No. 278), and on January 17, 2019, Defendants filed their responsive briefing. (ECF No. 279).

///

///

---

[4] Robinson titles the proposed amended complaint "First Amended Complaint," but Robinson has previously filed four complaints: (1) Original Complaint on September 8, 2008, in member case 1:08-cv-01339-BLW-LMB-PC ("08-1339") (ECF No. 1 in case 08-1339); (2) First Amended Complaint on November 3, 2008, in case 08-1339 (ECF No. 6 in case 08-1339); (3) Second Amended Complaint on March 5, 2009, in case 08-1339 (ECF No. 10 in case 08-1339); and (4) Third Amended Complaint on March 26, 2010, in case 08-1339 (ECF No. 34 in case 08-1339). Therefore, Robinson now seeks leave to file a Fourth Amended Complaint.

## III. ROBINSON'S PROPOSED FOURTH AMENDED COMPLAINT

In the proposed Fourth Amended Complaint, Robinson names as defendants the former and present Executive Directors of CSH, in their official capacities. Robinson seeks to bring two claims under § 1983, for (1) "Violation of his procedural and substantive due process rights under the Fourteenth Amendment, to not be subjected to conditions of confinement that are excessively restrictive in relation to any legitimate non-punitive governmental interests," and (2) "Violation of [his] First Amendment rights to communicate with others, create information and speech, receive information and speech, and send information and speech." (ECF No. 244 at 7:7-13.)

Robinson claims that his rights have been violated "as a result of 9 California Code of Regulations sections 891 and 4350, which prohibit Robinson from possessing a litany of electronic devices and having any access to the internet." (ECF No. 244 ¶ 1.) Robinson alleges that 9 Cal. Code Regs. § 891 prohibits all patients within the custody of DSH from having any access to the internet, and 9 Cal. Code Regs. § 4350 prohibits all patients within the custody of DMH from having any electronics with wireless capabilities, including but not limited to cell phones, PDAs,[5] tablets and videogame systems with internet capabilities, and any electronics with external audio recording capabilities. Robinson alleges that these two regulations were enforced against him, a patient at CSH, depriving him of his ability to communicate by such means as telephone privileges; the ability to talk privately with friends and family; the ability to research topics of interest over the internet; the ability to obtain information regarding civil rights organizations available over the internet; the ability to send emails; the ability to research and purchase products over the internet; the ability to receive news of current events from non-mainstream media sources; the ability to seek employment from companies that permit employees to work for them over the internet; the ability to set up

///

---

[5] A PDA is "a small handheld device equipped with a microprocessor that is used especially for storing and organizing personal information (such as addresses and schedules)." https://www.merriam-webster.com/dictionary/PDA (last visited on February 22, 2019).

blogs to reveal to others the unconstitutional conditions suffered by patients held pursuant to California's Sexually Violent Predator Act; and, other ways to communicate using the internet.

Robinson claims that CSH can effectively address professed safety and security concerns by far less restrictive methods without a blanket ban on electronics, such as wi-fi firewalls, wi-fi filtration systems, internet filtration systems, and internet monitoring systems. Robinson alleges that patients at CSH have sought explanations, without success, as to why administrators of CSH have failed to provide evidence of less restrictive alternatives and rational reasons why such less restrictive alternatives were rejected. Robinson argues that patients at CSH are subjected to conditions of confinement that are inconsistent with identified risks such as whether they access prohibited materials, whether they obtain and distribute confidential patients' information, and whether they infiltrate security systems.

Robinson requests as relief: "(1) declaratory relief in the form of a declaration that 9 Cal. Code Regs. sections 891 and 4350 are both excessively restrictive in relation to any legitimate non-punitive government interests and impermissibly violate the First Amendment, and (2) injunction seeking relief from the prospect of Robinson being subjected to 9 Cal. Code Regs. sections 891 and 4350." (ECF No. 244 at 7-8.)

## IV. MOTION TO AMEND -- RULE 15

### A. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure sets forth the applicable procedural mechanisms for amending a complaint. Rule 15 provides that before trial a complaint may be amended as a matter of course within 21 days after serving it or 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)." Fed. R. Civ. P. 15(a)(1)(A) and (B). Rule 15 further provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. Robinson has already amended the complaint more than once, and Defendants have opposed the motion for leave to amend. Therefore, Robinson requires leave of court to amend the complaint. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Regarding the relation back of an amendment, Rule 15 provides in pertinent part:

"[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

As a general matter, courts apply Rule 15(a) with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003); also see DCD Programs Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) ("[r]ule 15's policy of favoring amendments to pleadings should be applied with extreme liberality") (parentheses in original, internal quotation marks omitted). In determining whether to grant leave to amend, courts consider a number of factors identified by the Supreme Court in Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). These factors, known as the Foman factors, include (1) bad faith on the part of the movant; (2) undue delay or dilatory motive on the part of the movant; (3) repeated failure on the part of the movant to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; and (5) futility of the amendment. Eminence Capital, 316 F.3d at 1052; also see Griggs v. Pace. Amer. Group, Inc., 170 F.3d 877, 880 (9th Cir. 1999) (consideration of a motion to amend based on Foman factors "should generally be performed with all inferences in favor of granting the motion"). Not all of these factors merit equal weight. Rather, the Ninth Circuit has held that "it is the consideration of prejudice to the opposing party that carries the greatest weight," such that "[p]rejudice is the touchstone of the inquiry under rule 15(a)." Eminence Capital, 316 F.3d at 1052 (citations and internal quotation marks omitted). Indeed, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. (emphasis in original); see also DCD Programs, 833 F.2d 186–87 (noting that the party opposing amendment "bears the burden of showing prejudice" and that "delay, by itself, is insufficient to justify denial of leave to amend").

///
///
///

### B. Robinson's Position

Robinson "contends that the [proposed] amended complaint provides clarification and succinctness regarding Robinson's contentions as well as regarding the relief sought." (ECF No. 243 at 1.)

First, Robinson argues in his supplemental brief[6] that he should be allowed to describe in further detail how least restrictive alternatives can be implemented while maintaining the Defendants' goals of providing safety and security. Robinson contends that section 4350, which limits Robinson's First Amendment rights, should not be allowed to stand in light of recent changes to the law. Robinson cites Packingham v. North Carolina, 137 S.Ct. 1730 (2017) as a recent decision that found that sex offenders have a First Amendment right to social media.

Second, Robinson argues that Defendants will not be prejudiced if he is allowed to make changes in the complaint at this stage of the proceedings since the facts are well known to Defendants and they have already deposed Robinson. Robinson notes that his motion for leave to amend was not untimely because the scheduling order did not set any proper cut-off dates for filing amended pleadings.

Third, Robinson argues that a more detailed description of the issues in the amended complaint will narrow the scope of the issues to be decided and will prevent the court's time from being wasted at trial.

Finally, Robinson argues that section 4350 enacts a prohibition unprecedented in the scope of First Amendment speech it burdens, preventing Robinson from exercising his rights without a showing by Defendants that this sweeping regulation is necessary.

### C. Defendants' Position

On January 6, 2016, defendants Mayberg and Ahlin opposed Robinson's motion for leave to amend for two reasons: first, because Robinson has already amended the complaint

---

[6] Robinson filed two supplemental briefs in support of his motion for leave to amend, one on January 2, 2019, and one on January 4, 2019. (ECF Nos. 277, 278.) The two briefs are nearly identical, but the first brief is not signed by Robinson. All filings submitted to the court must bear the signature of the filing party. Local Rule 131; Fed. R. Civ. P. 11(a). Therefore, the court shall not consider the unsigned brief.

three times and should not be permitted to file a Fourth Amended Complaint; and second, because the Ninth Circuit affirmed the dismissal of Robinson's First Amendment claims and now Robinson is attempting to revive dismissed claims surreptitiously by "amending" his complaint. (ECF No. 245 at 3:26-27.)

On January 7, 2019, in response to Robinson's supplemental brief, defendants Joya, Zavala, Corona, Duvall, CSH, and the DSH argued as follows:

First, that Robinson's motion for leave to amend should be denied as unduly prejudicial to Defendants and futile; that Robinson lacks standing to bring a First Amendment claim, but even if standing exists, no viable claim can be stated; and that the 2018 amendments to CSH's regulation 4350 render the proposed complaint moot.[7]

Second, Defendants argue that they will be prejudiced if Robinson files an amended complaint at this late date, seven years after his initial complaint was filed, a year after Defendants answered the complaint in September 2014, more than six months after Defendants deposed Robinson in April 2015, and months after Defendants filed their motion for summary judgment on the computer claims in July 2015. Defendants assert that allowing the amended complaint to be filed will require a re-opening of discovery to examine a new constitutional claim concerning Robinson's right to communicate under the First Amendment under a now-superceded regulation, causing unnecessary expenditure of public resources to defend this action.

Third, Defendants argue that it would be futile for Robinson to amend the complaint because he lacks standing to bring a First Amendment claim for alleged denial of the ability to

---

[7] Defendants' argument that the 2018 amendments to CSH's regulation render Robinson's proposed complaint moot is unpersuasive in light of the Ninth Circuit's October 29, 2018 order which addressed the 2018 amendments:

> In January 2018, DSH implemented emergency amendments to Section 4350. The amendments do not render Appellants' claims moot because the personal wireless-capable electronic devices prohibited under the original Section 4350 are still prohibited under the amended regulation. See Panama Refining Co. v. Ryan, 293 U.S. 388, 413-14 (1935). (ECF No. 264 at 1 fn.1.)

Section 4350 was further amended on June 21, 2018, October 4, 2018, and February 5, 2019. All of these amendments prohibit the same personal wireless-capable electronic devices that were prohibited under the original Section 4350.

communicate and/or exchange information, and because Robinson's deposition testimony belies any alleged injury from the denial of the ability to communicate or exchange information (citing Ariz. Right to Life Pol. Action Comm. v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003). Defendants contend that Robinson must at least show "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," and his deposition testimony shows that Robinson did not sustain the alleged First Amendment injury from the regulatory ban on computers. Id. at 1006. In the deposition, Robinson testified that he simply wanted a computer to do legal work and view entertainment (movies), and admitted that CSH's library provided computers for legal research which he used on a weekly basis. (Exh. 11 to ECF No. 279-2, Robinson Depo., CD 227-4, 33:2-4, 33:20-34:3.) Further, Robinson also stated that the hospital provided typewriters for patients to perform legal work and computers and access to computers for treatment work. (Id. at 33:12-19.)

Fourth, Defendants argue that Robinson cannot state a viable First Amendment claim because there is a valid rational connection between the regulation and the legitimate governmental interest put forward to justify it. Defendants argue that section 4350, in original and amended form, is rationally connected to the legitimate interests of preventing the re-victimization of children portrayed in child pornography and in preventing harm to CSH's patients and staff. Some CSH SVPs have used personal wireless-capable devices to access or share child pornography or engage in other illicit activities such as contraband trafficking. Defendants also argue that Robinson has alternate means to exercise his First Amendment rights and was, offering evidence found at ECF No. 227-4 at 33-35, that Robinson "admittedly was able to use computers provided by CSH to conduct certain activities under the First Amendment, such as conducting library research, engaging in treatment activities, and printing documents." (ECF No. 279 at 22: 24-27.)

Finally, with respect to the case cited by Robinson in support of his motion, Packingham v. North Carolina, 137 S.Ct. 1730 (2017), Defendants find the decision in Packingham to be inapposite to Robinson's case concerning his proposed First Amendment claim.

Defendants argue that:

> "The security risks posed by a confined sexually violent predator, such as Robinson, from escape of the secured facility to harassment of staff and harm to community members are not analogous to those of a registered sexual offender on supervised release, determined ready to live in the community. Sexually violent predators are confined in a state hospital because their mental health disorder makes them 'a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' Cal. Welf. & Inst. Code § 6600(a)(1)."

(ECF No. 279 at 22:2-8.)

Defendants provide evidence that Robinson is a SVP who engaged in sexual abuse of minors, often in the context of playing videogames or accessing a computer, (ECF No. 279-2 at 14, 15-16 (Exh. 2), People v. Robinson, Nos. D050022, D051941, 2008 WL 3199512 (4th Dist. Cal. 2008) at *2-4), and they conclude that Robinson cannot state a cognizable First Amendment claim for denial of internet access or other computer-enabled means of exchanging speech and information under section 4350.

### D.  Discussion

With respect to the Foman factors, the court shall go directly to the futility factor as the court finds it would be futile for Robinson to be allowed to amend his complaint.

#### 1.  Fourteenth Amendment Due Process Claims

Plaintiff has included Fourteenth Amendment due process claims in the proposed Fourth Amended Complaint. To the extent that Plaintiff seeks to revive his due process claims his motion shall be denied because these claims were previously resolved in this case and it would be futile to revive them.[8]

On August 16, 2016, the district court granted summary judgment to all of the Defendants on all of Plaintiff's claims, including his due process claims. (ECF No. 249-253.)

---

[8] In its October 29, 2018 order remanding this case, the Ninth Circuit focused on Plaintiff's request to add a First Amendment challenge to Section 4350. (ECF No. 264 at 4-5.) The Ninth Circuit gave no specific indication that the district court should also reconsider whether Plaintiff could revive his due process claims. Nevertheless, the court has addressed in this order the futility of reviving the due process claims in the proposed Fourth Amended Complaint.

12

In its order, the court discussed Robinson's substantive due process claim at length.[9] (ECF No. 249.) The court also found that Robinson failed to state a procedural due process claim.[10] The Ninth Circuit discussed Robinson's procedural and substantive due process challenges to section 4350 and affirmed the district court's summary judgment order on October 29, 2018, (ECF No. 264 at 3-5). Thus, all of Plaintiff's claims, including his due process claims, were resolved on summary judgment.

Robinson has not set forth any new facts or law of a strongly convincing nature to induce the court to reverse its prior decisions. See Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D. Cal. 1986), affirmed in part and reversed in part on other grounds, 828 F.2d 514 (9th Cir. 1987); Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) ("A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.") Id. Therefore, the court finds it futile for Plaintiff to amend the complaint to revive his due process claims at this stage of the proceedings.

### b. First Amendment Free Speech Claim

Robinson seeks to bring a new claim not currently before the court in this case, claiming that CSH violated his First Amendment rights "to communicate with others, to create information and speech, [and] to receive [and] send information and speech," (ECF No. 244 at 7.) Robinson claims that his freedom of expression under the First Amendment was violated by denial of his access to the internet. This court, however, has already addressed this First

---

[9] Based on the undisputed facts, the court found that Robinson failed to state a Fourteenth Amendment substantive due process claim because (1) there is no constitutionally protected right for Robinson or other SVPs to possess and use personal laptops and electronic devices; (2) there is no evidence that Regulation 4350 was expressly intended to punish patients at CSH; (3) Regulation 4350 is not excessive in relation to its non-punitive purposes; and (4) those same non-punitive purposes could not be accomplished with less harsh methods. (ECF No. 249 at 15-27.)

[10] The court held that "[b]ecause Plaintiffs cannot demonstrate that they have a constitutionally protected property interest in owning their own electronic devices, any claim that Defendants violated their procedural due process rights must fail as a matter of law. See Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) ("Valdez did not have a state-created liberty interest in using a telephone during his pretrial confinement. Accordingly, his procedural due process claims fail.") (ECF No. 249 at 18.)

Amendment issue squarely in a similar case, Rainwater v. Ahlin, 1:18-cv-00049-LJO-SAB-PC, 2018 WL 2251713, at *10-12 ¶C, 2018 U.S. Dist. LEXIS 81954 at *10-12 ¶C (E.D. Cal. May 15, 2018). In Rainwater, as here, the plaintiff was a SVP civilly detained at CSH and claimed that "confiscating his electronic devices and items and denying him assess to the internet [pursuant to Cal. Code Regs. tit. 9, § 891 and § 4350] violate[d] his right to freedom of speech and freedom of expression under the First Amendment." Id. at 10. As with Robinson, Rainwater alleged that there is a computer lab available [at CSH] for the use of civil detainees. Id. at 11.

The court's analysis in Rainwater, as follows, is applicable to the present case.

An inmate does not retain rights inconsistent with proper incarceration. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). This includes those First Amendment rights that are inconsistent with status as a prisoner or with the legitimate penological objectives of the corrections system. Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (U.S. 1977). For example, the Supreme Court has held that freedom of association is among those rights least compatible with incarceration and some curtailment of the freedom must be expected. Overton, 539 U.S. at 132; see also Pell v. Procunier, 417 U.S. 817, 826 (1974) (limitations on press interviews); Thornburgh v. Abbott, 490 U.S. 401, 405 (1989) (regulation allowing rejection of incoming mail that was determined be detrimental to security, good order or discipline of the institution or if it might facilitate criminal activity); Block v. Rutherford, 468 U.S. 576, 591 (1984) (denial of contact visits).

Further, courts have routinely held that denying a SVP the right to access the internet does not violate the First Amendment. See Telucci v. Withrow, No. 116CV00025JLTPC, 2016 WL 2930629, at *5–6 (E.D. Cal. May 19, 2016); Consiglio v. King, No. 115CV00969BAMPC, 2016 WL 4000001, at *3–4 (E.D. Cal. July 25, 2016); Cerniglia v. Price, No. 117CV00753AWIJLTPC, 2017 WL 4865452, at *4 (E.D. Cal. Oct. 27, 2017); Carmony v. Cty. of Sacramento, No.

CIV S–05–1679LKKGGHP, 2008 WL 435343, at *18 (E.D. Cal. Feb. 14, 2008), report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 795101 (E.D. Cal. Mar. 25, 2008), order vacated on denial of reconsideration (Apr. 9, 2008), and report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 2477646 (E.D. Cal. June 17, 2008). Plaintiff's complaint on its face demonstrates that the regulations restricting access to the internet have been put in place to address issues with child pornography at DSH and that this continues to be a problem at CSH. (FAC 10–11, 15–16, 17, 19, 23.)

Plaintiff alleges that his rights under the First Amendment to protected speech is being violated by denying him possession of devices that allow his protected speech to be expressed. "The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility." Hydrick, 500 F.3d at 994.[11] "In weighing those interests, it cannot be ignored that ... SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others." Id. "Therefore, the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons." Id. Four factors are relevant in deciding whether a regulation affecting a constitutional right that survives detainment withstands constitutional challenge: (1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and detainees and facility resources; and (4) whether there

---

[11] Hydrick v. Hunter, 500 F.3d 978 (9th Cir. 2007) vacated and remanded on other grounds by 556 U.S. 1256 (2009).

15

are ready alternatives to the regulation. Overton, 539 U.S. at 131–132 (internal quotation marks omitted) (citing Turner v. Safley, 482 U.S. 78, 89–91(1987) ).

While Plaintiff alleges that he is being denied the right to express his protected speech, an electronic device, such as a computer, is just one means for Plaintiff to accomplish this. Plaintiff has other means to gather information and to express himself such as the television, mail, or telephone. Further, Plaintiff has access to the computer lab for his legal and treatment activities. Plaintiff's first amended complaint does not allege that his lawful communication or speech is not allowed by other means.

Further, the regulations prohibition regarding devices that have memory storage cannot be said to be excessive in relation to the regulations purpose. The devices which Plaintiff alleges are prohibited, such as hard drives and thumb drives are specifically the types of devices that would allow for the transfer and storage of the illegal material that is the purpose of the prohibition. Therefore, the Court finds that Plaintiff has failed to state a claim under the First or Fourteenth Amendment based on denial of access to the internet or electronic devices.

Rainwater, 2018 WL 2251713, at *11–12.

In support of his motion to amend, Robinson cites Packingham, 137 S.Ct. 1730, for its recent decision involving a First Amendment challenge to a North Carolina statute that prohibited all registered sex offenders from accessing social media websites. Packingham does not support Robinson's position here. In Packingham, the Supreme Court found that under the circumstances presented, the statute was overbroad. However, in the concurrence, the Packingham Court recognized that the state may legitimately regulate the use of the internet by sex offenders because it is a powerful tool that can be used to commit sex crimes. Id. at 1737 ("the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor").

///

///

> As discussed by Justice Alito:
>
> Several factors make the internet a powerful tool for the would-be child abuser. First, children often use the internet in a way that gives offenders easy access to their personal information—by, for example, communicating with strangers and allowing sites to disclose their location. Second, the internet provides previously unavailable ways of communicating with, stalking, and ultimately abusing children.... And an abuser can use a child's location posts on the internet to determine the pattern of the child's day-to-day activities—and even the child's location at a given moment. Such uses of the internet are already well documented, both in research and in reported decisions.
>
> Because protecting children from abuse is a compelling state interest and sex offenders can (and do) use the internet to engage in such abuse, it is legitimate and entirely reasonable for States to try to stop abuse from occurring before it happens.

Id. at 1739–40 (Alito, J., concurring) (footnotes omitted).

This court finds Packingham distinguishable from Robinson's case, which involves regulations for electronic devices and internet access to civilly-detained persons who have been adjudicated as sexually violent predators under California law. The court concurs with Defendants that the security risks posed by a confined sexually violent predator, such as Robinson, is not analogous to those of a registered sexual offender on supervised release, determined ready to live in the community. Therefore, the finding in Packingham does not support Robinson's position.

Based on this analysis, the court finds that Robinson's First Amendment claim is not cognizable and that it would be futile to allow Robinson to amend the complaint to add this claim.[12] Therefore, Robinson's motion for leave to amend the complaint to add a First Amendment free speech claim concerning computer access should be denied.

## V. RECOMMENDATIONS AND CONCLUSION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

---

[12] In light of the court's finding that it would be futile for Robinson to file the proposed Fourth Amended Complaint, the court shall not address Defendants' other arguments.

17

1. Robinson's motion for leave to amend the complaint, filed on December 23, 2015, be DENIED; and
2. The Clerk be directed to:
   (1) Close this case, and
   (2) Serve the Ninth Circuit with a copy of this order.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **seven (7) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **March 5, 2019**          **/s/ Gary S. Austin**
                                  UNITED STATES MAGISTRATE JUDGE